## ᛚ Franciscus *against* Reigart.

In making an avowry or cognizance, in an action of replevin, upon a distress for rent, it is not necessary to set out the chain of title of the lessor.   And this rule is applicable to a distress for ground rent.

A distress for rent may be made by a bailiff, upon a parol authority.

Upon a distress for ground rent, and replevin by the tenant, he may not set off taxes paid by him during the years for which the ground rent became due.

ERROR to the district court of *Lancaster* county.

This was an action of replevin by George Franciscus against Emanuel C. Reigart, for personal property of the plaintiff, which had been distrained for rent by the defendant ; to which the defendant avowed as follows :

"And the said Emanuel C. Reigart, by William Norris, his attorney, comes and, defends the wrong, &c. and injury, &c. and when, &c.   And as the bailiff of John B. Newman, well acknowledges the taking of the said goods and chattels, in the said declaration mentioned, in the said place, which, &c. justly, &c.   Because he saith that the said George Franciscus, continually, from and after the 1st day of May, in the year of our Lord one thousand eight hundred and twenty, until the 1st day of May, in the year of our Lord one thousand eight hundred and thirty-one, and at the same time, when, &c. enjoyed a certain lot of ground, situate in Queen street, in the said city of Lancaster, in the county of Lancaster aforesaid ; containing in front on said street, twenty-one feet five inches and a half; and in depth to a fourteen feet alley, two hundred and forty-five feet : bounded on the north by lot No. 507, on the east by said alley, on the south by lots Nos. 122, 121, 120 and 119.   The said lot being numbered in the general plan of said town of Lancaster, No. 508.   And that the said George Franciscus, the plaintiff, so continually enjoyed the same lot for all the time aforesaid, as the tenant of the said John B. Newman, by virtue of a certain demise or grant thereof, from James Hamilton to Thomas Cookson, his heirs and assigns, theretofore made at and under the yearly rent of 80 shillings, sterling money of Great Britain, equal in value to 17 dollars and 78 cents, lawful money of the United States, payable yearly, on the 1st day of May, in each and every year for ever, unto the said James Hamilton, his heirs and assigns.   (The said George Franciscus being the assignee or alienee of the said Thomas Cookson, the grantee of the said lot and premises ; and the said John B. Newman, being the grantee or alienee in fee simple of James Hamilton, the grantor of the said lot.)

[Franciscus v. Reigart.]

And because 195 dollars and 58 cents, of the rent aforesaid, due and payable by the said George Franciscus to the said John B. Newman, for eleven years' rent of said lot of ground, ending on the 1st day of May, in the year of our Lord one thousand eight hundred and thirty-one, and also at the time of the taking of the said goods and chattels, were due and in arrear, and unpaid by the said George Franciscus to the said John B. Newman, the said Emanuel C. Reigart, as bailiff of the said John B. Newman, well acknowledges the taking of the said goods and chattels, in and upon the lot aforesaid, at the place aforesaid, in which, &c. and justly, &c. as, and for, and in the name of a distress for the rent so due and in arrear, to the said John B. Newman, as aforesaid.  And this he is ready to verify.  Wherefore, he prays judgment and a return of the goods and chattels aforesaid, together with his damages, costs and charges, in this behalf to be adjudged to him."

Upon filing this avowry, the defendant moved for a rule on the plaintiff to plead on or before a certain day.

The same day the plaintiff craved oyer, in the following terms :

" To the avowry filed by leave of the court, the plaintiff, by B. Champneys, his attorney, reserving all objections to the form and subject matter of the same, craves oyer of the deed of demise or grant, alleged in the said avowry, together with the several mesne deeds or conveyances by which the said John B. Newman, as is alleged in the said avowry, became the grantee or alienee in fee simple of James Hamilton."

This demand of oyer, which was simultaneously made with the rule to plead, was likewise placed on file ; and both matters were argued together, at the June term.  The only question, however, for the consideration of the court was, whether the rule to plead should be then granted or not ?

Hays, president.  " The proceedings in this action are said to be important ; and the plaintiff, by placing his prayer of oyer on the record, has evinced his intention of procuring a revision of the judgment of this court upon that point, should he be dissatisfied with the decision.

" In order to bring error, the party who insists upon oyer, must enter his prayer on record.  This is in the nature of a plea.  Such is the language of numerous authorities.  3 *Salk.* 119, 4 ; 1 *Saund.* 9, 6.

" If the other party will not give oyer when demanded, he may counterplead or demur to the defendant's prayer, and the court will give judgment thereon.

" And if the court deny oyer when it ought to be granted, it is error, and a writ of error lies upon their judgment.

" After a demand of oyer, when the party is entitled to have it, he cannot be compelled to plead without it, even though the deed be lost."

[Franciscus v. Reigart.]

"Although the discussion of the argument embraced all the questions relative to the right to demand oyer in this case, and I have carefully investigated that point, yet I do not think it proper to decide upon the right in the present state of the record. The prayer of oyer, presented as this is, must be treated as a plea, and as such, requires, regularly, an answer upon record from the adverse party. When that answer is duly delivered, the court will then be prepared, (without putting the counsel to the trouble of another argument, unless they desire it) to enter such a judgment as will support a writ of error. It is perhaps, doubtful, whether a decision upon the present motion would be considered in that light. At any rate, the other is the regular and unexceptionable course; and at present, the defendant, I think, is not entitled to call upon the court to enforce his rule to plead. His motion must therefore be denied."

During the trial of the cause a great many bills of exception to the admission and rejection of evidence were taken, no one of which, except those subsequently embodied in points put to the court, gave rise to any principle which was determined by the court. The court below embody in their opinion all the facts and law of the case necessary to its being fully understood.

Hays, president. The importance attached to this cause, is founded upon the idea of a large number of the freeholders of this city, that they have an interest in the question you are now trying. Holding under grants similar to that from which the plaintiff's title is deduced, they have reason to suppose that their property must be consequently affected by the decision which will be made in the present suit.

The Hamilton estates have undergone considerable change within the last twenty years, by reason of the common recoveries in 1815 and 1818, and the death of James Hamilton and Andrew Hamilton, the only male descendants of Andrew Hamilton, brother of James Hamilton the elder, whose will has been given in evidence. They are now held by several different persons, none of whom reside in this county, or are known to our citizens, with perhaps a very few exceptions. These persons have, from time to time, employed different agents to receive the rents claimed by them respectively, from the holders of city lots; and even since the partition of 1830, there have been instances of agents of two several claimants, demanding rents which could belong to one of them only. Such circumstances were calculated to excite, and have disquieted the minds of the lot owners of Lancaster. Willing as we must presume them to be, to comply with all their just obligations, they cannot but feel as an evil, the uncertainty that seems to have rested upon the subject, with respect to the parties entitled to receive the rents charged upon their property. The evil, we may hope, will terminate with the controversy involved in this action. In contributing to so desirable a result, you will find the reward of your labours in the tranquillity to which this cause must ultimately restore a large community.

[Franciscus v. Reigart.]

By your patience and attention during the progress of the trial, which has been rendered the more tedious by the exhibition of voluminous paper testimony, you have given all parties the best assurance of a true and just decision. To assist you in realizing that expectation, I will proceed to lay before you my views of the case, and especially of the law, with which it is my duty to charge you. That I may do this the more clearly, I shall commence by stating the points that have been presented by the counsel of the respective parties, and the answers to each, in their order, which are given you in charge. If you should find any difficulty in comprehending these answers as I read them, (for they are expressed with brevity) I indulge the hope that your difficulty will be removed when you hear the general charge in which the leading points will be explained, as clearly as I can do it, within the space allotted for the purpose.

The court is requested by the defendant to charge you upon the following points.

1. That the deed from James Hamilton, proprietor, to Thomas Cookson, in 1749—and the regular chain of title from Cookson down to George Franciscus, is perfect and complete—and that the will of James Hamilton, the deed of the 6th of August 1818, to lead the uses, the common recovery suffered in pursuance thereof, and the deed of the 26th of August 1818 to James Lyle and John B. Newman, in trust, &c. vest the complete legal title to the ground rents, in James Lyle and John B. Newman, and the survivor of them; and if the jury believe, from the testimony of General Cadwalader that William Hamilton, the first devisee, died in 1813, and that James Hamilton, second devisee, died in 1817, and that James Lyle, the other trustee, died in 1826, then both the tenancy of George Franciscus, and the right of John B. Newman, to the arrearages of ground rents on plaintiff's lot, are fully proved, and the plaintiff completely fails in supporting his two first pleas.

2. That John B. Newman, trustee as aforesaid, being vested with the legal title to the ground rents, had a right to distrain for the rents in arrear, either by himself or by his agent or bailiff.

3. That a bailiff may be appointed either by writing, or by parol or word of mouth; either is equally good and valid in law, and the only difference is, that where it is in writing, it is more easily proved; and if the jury believe the testimony of General Cadwalader, then E. C. Reigart, the defendant, as the bailiff of John B. Newman, had a right to make the present distress.

4. That the letters of attorney given by several of the branches of the Hamilton family, do not in the least impair the right of John B. Newman to distrain either by himself or bailiff; they having but the equitable, he the legal right, as is further shown by the power of attorney to E. C. Reigart, of the 13th of May 1831, in which he joins; and if the court are of opinion that this is a general power, then E. C. Reigart, at the time he made the distress, had both a parol and written authority to do so.

[Franciscus v. Reigart.]

5. That the writ of partition to December term 1830, No. 47, does not and cannot impair the legal right of John B. Newman, to receive and recover these ground rents; that in its nature it could not be a partition of any other estate than the parties had in it; and as their estate was equitable, it was a partition of the equitable, leaving the legal right to receive and recover the ground rents still in Newman; that Newman's joining in it (more especially as he only joined as one of the executors of Margaret Hamilton) can have no such effect; and that as to ten years of the ground rents, up to May 1830, they were due and in arrear, and not the subject of a writ of partition, nor reached, nor touched, by this partition at all.

6. That defendant's claim to these rents is fully established by plaintiff's own deed; and as plaintiff has pleaded payment and no rent in arrear, and has failed to show any payment of the rent in arrear distrained for by the defendant, E. C. Reigart, if you believe the evidence, he, Emanuel C. Reigart, will be entitled to your verdict for the rent you may find in arrear and the value of the goods.

The court answer the first, second, third and fifth propositions in the affirmative.

4. I concur in the first part of this proposition; and with respect to the power of attorney to E. C. Reigart, of the 13th of May 1831, I am of opinion that the authority therein given by John B. Newman, was an authority to make the distress, on the 25th of July 1831.

6. Answered in the affirmative, with this qualification, that the defendant's claim to the rents is established by the plaintiff's deed, and the other evidence in the cause, especially that which relates to the fact of his authority, if the jury believe it; and that the form of the verdict, if the jury find for the defendant, is properly stated.

The court is also requested by the plaintiff, to charge you upon the following points.

1. The remedy of distress upon the grant of a rent charge is against common right, and must be construed strictly, and must be used in the manner that it is given; and where the power is exercised by an agent, his authority must be delegated in clear and precise terms, and he must act strictly within the scope of his authority.

2. The only evidence offered of the authority of defendant to make this distress, which is the subject of controversy in this action, is contained in the deposition of Thomas Cadwalader, and the statement made by him in such deposition contains no legal evidence of such authority.

3. The jury must be satisfied that the defendant was clothed with full authority at the time the distress was made, emanating from the persons vested with the estate, in the rent charges in the city of Lancaster, and as no such authority has been proved, the plaintiff is entitled to recover.

4. The common recovery suffered in the common pleas of Lan-

caster county, to August term 1815, No. 803, is sufficiently comprehensive in its terms to embrace all the real estate, including the ground rents, which were vested in James Hamilton at the time of his decease in 1783.

5. James Hamilton, if he acquired any estate by the proceeding, having been vested with an estate in fee simple in the lands and real estate, recovered two-thirds to himself, and one-third to Andrew, under his agreement with him: the common recovery suffered to August term 1818, No. 535, and the deeds of August 6th, and August 26th, 1818, could not either affect or conclude the interest or estate of any one vested with an estate of freehold in the premises, who was not a party to the record.

6. The heirs of James Hamilton, the younger, therefore, who acquired title through him, could not be affected by the recovery.

7. Deeds to lead as well as deeds to declare the uses and trusts of common recoveries, vest no legal interest in the trustee which can give him any control over or entitle him to enter or take possession of the estate recovered. The trustee is a mere instrument seised to the use of the *cestui que trust.* The latter has the entire interest in, and sole control over the fund and property which were the subject of the recovery.

The deed, therefore, of the 26th of August 1818, from Andrew Hamilton and wife, to J. Lyle and J. B. Newman, being a deed to declare the uses of common recovery suffered to August term 1818, if operative at all upon the interests of those who were not parties to the deed, which plaintiff denies, vested the estate recovered in the several persons for whose use the same was conveyed, as stated in that deed ; and they alone had power to enter upon and sell and convey the estate, and to make claims and distresses for any amount which they deemed to be due.

8. The letters of attorney given in evidence by plaintiff, recorded in this county, in some of which John B. Newman is a party, are plenary evidence that the parties claiming title under the recovery had the entire legal control over the estate recovered.

9. The demand made in May 1831, by defendant of the plaintiff, in which he states that he is authorized by the guardians of Mary Ann Hamilton, and others, to receive the rents allotted to them respectively in the partition of the estate of James and Andrew Hamilton, is an admission upon his part of the legal interest of these parties ; and prevents him from assuming another authority different from that alleged in such demand.

10. The writ of partition to December term 1830, No. 47, as between the parties to that writ (the proceedings not affecting, as is contended, either the interests or liabilities of the lot holders who had no notice of it) fixes the interest of each of the claimants in said writ, as allotted by the inquest and confirmed by the court ; and the rent charges claimed upon the several lots embraced in such parti-

[Franciscus v. Reigart.]

tion, can only be demanded by the several parties in interest, to whom the several portions of the estate are allotted.

11. Eliza Hamilton, as executrix of Andrew Hamilton, would be the claimant of such portions of rent as were due to her deceased husband, previous to his death in 1825; and the rents of his estate, that might subsequently accrue, would be recoverable according to the disposition which he made of the same in his last will and testament.

12. The parties to whom the several portions of the estate are allotted by the partition of December term 1830, No. 47, cannot recover (if they have a right to the portion of rent charges thus assigned to them) by a resort to the remedy by distress for any rent which accrued prior to the final judgment rendered in such partition.

To which the court answer:

1. Such remedy is said not to be by common right, that is, by common law, because it is reserved or granted by deed; and if not so reserved or granted, the law does not give it as incident to a rent charge. The clause containing the reservation where the meaning is doubtful, is of course construed strictly against the grantor. The remedy is to be used in the manner provided by the reservation, if the manner be specified; and where the power of distress is delegated to an agent, he must act within the scope of his authority, as agents are bound to do in other cases.

But rent charges are not the less due because they arise from the contracts of parties; nor is the remedy by distress less effectual where it is reserved, than it is in regard to other rents to which it is incident by law; nor is the appointment or authority of an agent to distrain, placed upon any peculiar footing in the case of rent charges, or accompanied by any conditions different from those which attach to the relation and power of such agent in the case of other rents.

2. I cannot admit the conclusion here stated: the deposition referred to contains legal evidence of a parol authority in the defendant to make the distress in question, as will be hereafter explained.

3. It is laid down in respectable authorities, and such I take to be the law, that if the plaintiff traverse the fact as alleged in the cognizance, that the defendant is bailiff to the party under whose authority he distrained, evidence of a subsequent ratification and approval will be sufficient, although there was no prior command given. The plaintiff has traversed that fact in the present instance, and consequently a subsequent approval or ratification of the distress would be sufficient.

But there is evidence that the defendant was authorized at the time the distress was made; and it is submitted to the jury, whether that fact is not proved.

4, 5 and 6. The ground rents in the city of Lancaster were not embraced by the common recovery of 1815; its terms did not comprehend them; therefore, the conclusion of the next two propositions,

however correct in regard to the estates affected by that proceeding, does not apply to the rent in question here.

7. The first paragraph of this point is correct, but the conclusion which follows in the next paragraph is not sustained; because the deed of the 26th of August 1818, from Andrew Hamilton and wife to James Lyle and John Beauclerc Newman, is not a mere deed to declare the uses of the common recovery referred to, but vests the legal estate in John Beauclerc Newman, as surviving trustee.

8. Whether the parties had the control herein alleged, is a question of law depending upon the construction of the deed referred to in the preceding answer.　Being of opinion that the use in this deed was not executed in the several persons therein mentioned, as entitled to designated portions of the estate conveyed, but that they had a trust estate only, I cannot regard these letters of attorney as possessing the character or force ascribed to them by this proposition.

9. The legal interest of the parties cannot be changed or altered by the opinion of the defendant; it depends upon their muniments of title; nor does the demand herein referred to preclude the defendant from subsequently making a good demand on a better authority.

10. The partition operated only upon the estates held by the parties to it, by severing such estates as were before held in common. It did not and could not divest any estate granted by the deed of the 26th of August 1818, or give the parties to the partition any higher or better right to demand the rents than they before enjoyed.

11. This would be the effect as to the ultimate appropriation of the portions of rents herein mentioned, but would not interfere with the legal estate of John B. Newman as trustee.

12. I answer this proposition affirmatively, without assenting to that which may appear to be implied; that these parties can recover, by a resort to the remedy by distress, the several portions of the rents allotted to them which have become due since the judgment in partition.

The foundation of this action is the taking of the plaintiff's property, and the notice thereof given him by the defendant on the 25th of July 1831.　The writ of replevin was issued on the 27th of July, being two days afterwards.

The writ called upon Emanuel C. Reigart to answer wherefore he took the plaintiff's goods and chattels, specifying the same; and his answer is (in what is called his avowry), that he took and detained the goods and chattels in the writ mentioned, as bailiff of John Beauclerc Newman, for and in the name of a distress for 195 dollars 58 cents of rent, due and payable by George Franciscus, the plaintiff, to the said John Beauclerc Newman, as his tenant, for eleven years rent of lot No. 508, in Queen street, ending on the 1st day of May 1831; which rent was due, and in arrear, and unpaid at the time of the taking of the said property.

The plaintiff replies to this, 1st. That he is not the tenant of John B. Newman.　2d. That the lot described in the said avowry is not

IV.—O

[Franciscus v. Reigart.]

the close, soil and freehold of the said John B. Newman.    3d. That the defendant is not the bailiff of John B. Newman. , 4th. That there is no rent in arrear, either to the defendant or John B. Newman.   And lastly, that he has paid the rent claimed.

This reply is, substantially, that he, George Franciscus, owes no rent to John B. Newman; and that Emanuel C. Reigart is not entitled to recover or receive such rent, if he did.

The defendant, in making out his right to recover and receive the rent in question, first exhibited the tenure by which George Franciscus holds and enjoys the lot No. 508, in Queen street.    The title is deduced from Thomas Cookson, to whom James Hamilton, in 1749, conveyed it in fee simple, reserving 80 shillings sterling to be paid yearly to the grantor, his heirs and assigns for ever.    From Thomas Cookson, by numerous mesne conveyances or assurances, and proceedings in law, this property came to the seisin and enjoyment of William Taylor, who, in 1825, by his indenture, dated the 1st day of December, in that year, granted to the plaintiff, Franciscus, subject to the yearly ground rent then due, and to become due to whomsoever was entitled to receive the same.    The liability of the plaintiff to pay the rent of 80 shillings a year, charged upon this lot, thus conveyed to him, is completely established by this part of the evidence.

But is he liable to the defendant?    To show that he is, Mr Reigart has produced evidence of the title of John Beauclerc Newman, to demand and recover this rent; and of his own authority, under him, to make the distress, on the 25th of July 1831.    Upon the sufficiency or insufficiency of this evidence, the fate of the present action depends.

James Hamilton, by the deed to Thomas Cookson, in 1749, reserved 80 shillings a year rent, to be paid by Thomas Cookson, his heirs and assigns, to the said James Hamilton, his heirs and assigns for ever.

James Hamilton died in 1783, but left a will, disposing of this yearly rent, among other property, in such manner, that it devolved upon James Hamilton the younger, who died in 1817, without issue, intestate, and who held it, with large estates besides, under the will, in tail male.    In 1815 he suffered a common recovery, for the purpose of barring the entail, in a certain portion of the estates devised to him, which are recited in the writ of entry, as one thousand five hundred messuages, one thousand five hundred barns, one thousand five hundred stables, one thousand five hundred gardens; and one thousand eight hundred acres of land, three hundred acres of land, three hundred acres of pasture and one thousand two hundred acres of arable land, with the appurtenances, situate in the county of Lancaster.

Having by this proceeding become entitled to those estates in fee simple, he, on the 28th of May 1816, by his deed of that date, conveyed the one-third thereof to his brother Andrew Hamilton, his

heirs and assigns. After his death, Andrew Hamilton succeeded to the residue of the estates, not affected by the common recovery of 1815, as tenant in tail under the will before mentioned of his great uncle James Hamilton ; and, in 1818, he suffered a common recovery for the purpose of barring the entail in the ground rents issuing out of the lots in the city and county of Lancaster, having first made a deed to lead the uses, as it is called, which was executed to John B. Newman, J. Lyle and Margaret Hamilton ; and the object of which was to provide for the enuring of eight-fifteenths of these ground rents, by the common recovery, to his sisters, Margaret and Mary Hamilton, and Mrs O'Bierne, and his nieces, Mary and Ellen Lyle.

On the 26th of August 1818, Andrew Hamilton and wife (the fee simple being vested in him by the common recovery recently suffered) executed another deed to James Lyle and John Beauclerc Newman, granting, &c., to them and the survivor of them, and the heirs and assigns of the survivor of them, all and every the rents, tenements and hereditaments in and by the within [that is, the former] indenture mentioned, described and set forth, together with all the rights, incidents and appurtenances thereunto belonging, &c., to have and to hold, all and singular, the said rents, tenements and hereditaments, with all and singular the rights, incidents and appurtenances unto the said James Lyle and John Beauclerc Newman, and the survivor of them, and the heirs and assigns of the survivor of them, to and for the only proper use and behoof of the said James Lyle and John Beauclerc Newman, and the survivor of them, and the heirs and assigns of the survivor of them, in trust to recover and receive the said rents as they shall become due, and to sell or otherwise dispose of the whole or any part of the granted premises, for such sum or sums, and in such mode or manner as they or the survivor shall deem most advisable, and to hold the proceeds as follows, to wit: as to two undivided fifteenth parts thereof in trust for Margaret Hamilton, her heirs, executors, administrators or assigns ; as to two other undivided fifteenth parts thereof, in trust for Mary Hamilton, her heirs, executors, administrators or assigns ; as to one other undivided fifteenth part thereof in trust for Mary Ann Lyle, her heirs, executors, administrators or assigns ; as to one other undivided fifteenth part thereof in trust for Ellen Lyle, her heirs, executors, administrators or assigns ; as to two other undivided fifteenth parts thereof in trust for Rebecca O'Bierne, during her natural life, and no longer, for her sole and separate use, as if she were single and unmarried ; and after the decease of the said Rebecca O'Bierne, for such of her children as shall be then living, and to their heirs, executors, administrators or assigns, as tenants in common and not as joint tenants, and as to the residue thereof, being seven undivided fifteenth parts thereof, for the said Andrew Hamilton, party hereto, his heirs, executors, administrators or assigns, and to and for no other use, intent or purpose whatsoever.

James Lyle having died in 1826, John Beauclerc Newman, sur-

viving, became sole trustee under that deed, and unless the uses of these several *cestuis que trust* were executed by the statute, as it is termed, that is, unless this deed be such as gives Margaret Hamilton, Mary Hamilton, Mary Ann Lyle, Ellen Lyle, Rebecca O'Bierne and Andrew Hamilton, possession at once of the estate granted to their use, he became solely entitled as trustee to the legal estate in these rents. Again, unless this deed of trust was and is inoperative by reason of the common recovery suffered in 1815 by James Hamilton, the brother of Andrew Hamilton the grantor, or was defeated by the partition of 1830, or by the subsequent letters of attorney of the several persons for whose use the grant was made to the use of John B. Newman in trust, &c. ; it gives him alone, since the decease of James Lyle, not only the legal estate in the ground rents, the rent in question being one of them, but the sole right to recover them from the owners of the lots, on their refusal to pay, by the remedy of distress.

First, then, is this a deed or grant, with respect to which the statute executes the use, that is, conveys the possession to the use and transfers the use into possession, thereby making the *cestui que use* i. e. Margaret Hamilton, Mary Hamilton, and the rest, in this case, complete owners of these rents as well at law as in equity ? If such be its character, no estate whatever remained in the grantees; but the persons for whose use, became at once entitled to the whole estate under this deed and the statute operating upon it. The statute referred to enacts, that when any person should be seised of lands, tenements, &c. to the use, trust, or confidence of any other person, &c., the person, entitled to the use in fee simple, fee tail, for life or years or otherwise, shall from thenceforth stand and be seised or possessed of the land, &c. of and in the like estates, as they have in the use, trust and confidence, and that the estate of the person so seised to uses, shall be deemed to be in him or them, that have the use in such quality, manner, form and condition, as they had before in the use.

But the statute does not abolish all trusts; for there are many circumstances in which they are instruments of great convenience and utility, and in which accordingly the statute does not extend to them, but the legal estate subsists in the trustee to enable him to perform the trust committed to him. It is also held that when a use is limited upon a use, it is not executed, but the legal estate is vested in him to whom the first use is limited. As where an estate is conveyed to another in these words, " to W. and his heirs to the use of him and his heirs, in trust for or to the use of R. and his heirs," the use is not executed in R. but in W., and the legal estate is vested in him as trustee. Now this case is perfectly parallel to the deed before us; which deed limits a use upon a use. The rents, tenements, &c., are conveyed to James Lyle and John B. Newman, and the survivor of them and the heirs of the survivor, to and for the only proper use and behoof of the said James Lyle and John B. Newman, and the survivor, &c. in trust to recover and receive the said rents and to

hold the proceeds for Margaret Hamilton and others. So, where something is to be done by the trustees, which makes it necessary for them to have the legal estate, such as the payment of the rents and profits to another's separate use—as in this deed with respect to Mrs O'Bierne; in such cases the legal estate is vested in the trustees. So, where the trustees are empowered to sell (as is the case in this deed), the legal estate vests in them, as they must have a fee in the whole estate to enable them to sell, because if it were uncertain what they may sell, no purchaser would be safe.

The deed of the 26th of August 1818, then, is clearly one which conveys a trust estate not executed by the statute; consequently John Beauclerc Newman has the sole legal estate in the rents which it grants, bargains, sells, &c. to him, his heirs and assigns, as survivor of James Lyle.

It is contended, on behalf of George Franciscus, that the first common recovery embraced the ground rents in Lancaster, and that the deed under consideration, which is founded on the second common recovery suffered by Andrew Hamilton, is of no effect. If this first proceeding referred to, extended to the ground rents, it would present an extraordinary instance of parties recovering by law suit a valuable estate, without knowing that they had sued for it, or being sensible of their success. Were an issue taken upon the fact, the second common recovery would probably be regarded as conclusive proof, that the parties did not know or believe that the ground rents were included in the first, and had not intended that they should be thus included.

Is the description, then, of the property for which the common recovery was suffered in 1815, so specifically applicable to these ground rents, as to impel us irresistibly to the conclusion, that they were embraced in that proceeding? Let us consider the description: it is in the writ of entry as follows: fifteen hundred messuages, fifteen hundred barns, fifteen hundred stables, fifteen hundred gardens; and eighteen hundred acres of land, three hundred acres of meadow, three hundred acres of pasture, and twelve hundred acres of arable land, with the appurtenances. Here is no mention of ground rents or incorporeal hereditaments; nor is there a term employed, which legally or technically comprehends rents. Messuages, barns, stables, gardens, land, meadow, pasture, arable land:—these are all corporeal things, having body and substance, being visible, tangible and permanent. The word *land* may comprehend them all; but it does not comprehend rents, which are incorporeal, which are not lands, but mere rights or profits issuing out of lands and tenements corporeal. This indeed is an essential characteristic of rent: "it must issue out of the thing granted, and not be part of the land or thing itself; wherein it differs from an exception in the grant, which is always part of the thing granted."

Nor are the ground rents embraced in the clause, " with the appurtenances." For these " appurtenances" were such as belonged

to the messuages, &c. therein described and intended to be recovered. If "appurtenances," therefore, comprehended rents in any case, the term would not comprehend the rent in this case; for the lot of George Franciscus, No. 508, was no part of the messuages, lands, &c. described in the writ of entry. That lot was not devised by James Hamilton the elder: it was no longer his, after 1794, when he parted with it to Thomas Cookson; consequently James Hamilton the younger had no estate or interest in it under his uncle's will. The writ of seisin recites the recovery of the fifteen hundred messuages, &c. described in the writ of entry, and then commands the sheriff to cause full seisin of the tenements aforesaid, with the appurtenances, "to be delivered to the said James Lyle, &c." Here the word "tenements" includes by express reference, the fifteen hundred messuages, fifteen hundred barns, &c. before described, and nothing else. It is most evident then, that the lot in question was not included in the first common recovery, and that the terms "tenements" and "appurtenances," do not apply to this rent charge.

The common recovery of 1815 does not therefore affect the deed of trust to John B. Newman.

Is it defeated by the proceedings in partition? By no means. Those proceedings parted the ground rents, so as to entitle the owners to their several and respective shares in the rents of certain designated messuages, lots and tenements; an arrangement as convenient, one would suppose, to the ground rent tenant, as the ground rent landlord. But the partition did not affect the rights of the parties in any other respect. What was before held in the aggregate, was severed into purparts, and each part assigned to its several owner. The partition did not enlarge the estate of any of the parties; that is not the function of the writ. It only divided such estate, as they held together and undivided. It could not convert an equitable into a legal estate, or divest any estate, equitable or legal, of which any party to it was before seised or possessed.

Again; is the deed of trust to John B. Newman defeated by the letters of attorney, by which the individual owners authorised special agents to collect and receive the rents mentioned in that deed? It is contended on the part of the plaintiff, that the deed was thereby defeated. There is no doubt, that a party who constitutes an attorney, may revoke the authority when he pleases, doing it without prejudice to the rights of others. But the question here is, whether any separate power or authority given or granted by the persons, in trust for whom and for whose benefit the deed was made and executed to James Lyle and John B. Newman, and the survivor of them, and the heirs and assigns of the survivor, can invalidate that deed, and render it of no force or effect whatever? And the law, gentlemen, on this point is clear. The trustee himself could not cancel the deed or impair his trust, without the assent of the *cestui que trust*, and all others beneficially interested; nor can the latter, by any act of theirs, invalidate, or revoke, or destroy the trust, with-

[Franciscus v. Reigart.]

out the assent of the trustee and all others, if there be others, who are interested in its preservation. There is nothing, however, in this deed of trust, which can render the appointment of agents or attorneys in fact, by the *cestui que trust*, improper. Their authority, when so appointed, is another matter. The deed, you will observe, grants to John Beauclerc Newman (the survivor of the trustees) the estate in the ground rents in fee simple, in trust to recover and receive the same, for the several persons therein mentioned, their heirs and assigns, according to their several and respective rights.

Now John B. Newman, having collected and received the rents under this deed, would be bound to pay them over to those for whose use they were intended, or to their order or assigns ; and if he should refuse to do so, would certainly be liable to an action to recover the same. They might, therefore, well constitute attorneys in fact, to demand, receive and recover these rents from John B. Newman, when the same should be by him collected and received. The two authorities do not appear to me incompatible—I mean John B. Newman's authority to collect and receive from the tenants under this deed, and the authority of the agents of Margaret Hamilton's executors, Mary Hamilton and others, to collect and receive their respective shares. But I wish to be understood, as not expressing the opinion, that such agents have a right to distrain the lot holders for rents, under those letters of attorney ; nor, on the other hand, of saying that if, in any instances, the lot holders have paid the rent to such agents, those payments are not good ; nor that the bailiff of John B. Newman could compel a repayment.

My opinion is, that the deed of trust of the 26th of August 1818, gives a valid, subsisting authority and right to John Beauclerc Newman, to proceed by distress against George Franciscus, to recover the arrears of rent by him due, and charged upon lot No. 508, in Queen street.

George Franciscus being liable to pay this rent to John Beauclerc Newman, and the latter being entitled to distrain for the same, the next question is with respect to the right or authority of Emanuel C. Reigart, the defendant, to make the distress in question. Was he duly authorised by John B. Newman, as his bailiff, to take and detain this property for a distress for the rent in arrear, as is alleged in the avowry? On the part of the plaintiff, it is contended: first, that there is no sufficient evidence of any authority, even verbal, from John Beauclerc Newman to him ; and secondly, that a verbal authority, if proved to have been given, is not sufficient to justify the distress.

1. It is said General Cadwalader's testimony, on which the fact of authority rests, is matter of opinion and hearsay; neither of which can be evidence. The witness states, that during all the summer of 1831, and previously, Emanuel C. Reigart was bailiff of John B. Newman, with power to distrain for rents due and payable out of lots in Lancaster. This, it is contended, is mere opinion ; because

[Franciscus v. Reigart.]

the witness did not specify the particular circumstances. But it is not given as opinion, or impression, that Emanuel C. Reigart was bailiff, but as a fact, and in the way such facts are generally testified to, when witnesses speak of what they know. Had the plaintiff desired particular information, as to the witness's means of knowledge, it was in his power to obtain it by his cross-examination. If he did not think proper to seek it in that way, he cannot expect the jury to infer that the witness was only giving his opinion, when he plainly states the existence of a fact, in the manner usual with those who speak of a fact within their own knowledge. Besides, this witness must have known, that to state his opinion of a fact, when he was called upon to testify his knowledge, would have been grossly improper; and that to give it in terms implying knowledge, would have been something worse—it would have been criminal. It is, therefore, submitted to the jury, that it is unreasonable to conclude, that when General Cadwalader says, Emanuel C. Reigart was, during the whole summer of 1831, and previously, bailiff of John Beauclerc Newman, he only meant to say, that such was his opinion merely.

Further, this witness has testified on his cross-examination, that Mr Newman gave him the verbal authority to give to Reigart, and that he did afterwards give it to him verbally. This is objected to, as being hearsay and no evidence. I cannot see it in that light. The question now is, as to the fact of a verbal authority given by John Beauclerc Newman, to the defendant. A verbal authority may be given (the sufficiency of it in this case we are not just now considering) either to the agent directly, when present, or transmitted to him through another; and so far as third persons are interested in the proof of the authority, the latter is the better mode. Had General Cadwalader stated that he heard another say, Mr Newman had appointed E. C. Reigart his bailiff, that, indeed, would have been inadmissible as hearsay; so, if he had stated that he heard Mr Reigart say, he had been authorised as J. B. Newman's bailiff; so likewise, had he stated that he heard J. B. Newman say he had formally given E. C. Reigart authority as his bailiff—but that is not his testimony. He speaks of the transaction itself, the giving of the authority, by word of mouth—a fact occurring in his own presence; not of what others had told him, as having formerly and elsewhere occurred. You, no doubt, perceive the distinction : if a verbal authority is to be proved at all, it must be proved by some one who heard the individual giving it say, I authorise, empower or appoint A to do so and so, or something to that effect, and who declares what he so heard. Now this is not hearsay, but the most direct testimony. Very different would it be, if the witness were to say, I was told by B, that he heard the individual spoken of, authorise A to do the thing. The testimony of General Cadwalader is therefore direct, and if you believe him, proves that Mr Reigart was verbally appointed the agent of John Beauclerc Newman, in the spring of 1831, with power to distrain for these rents.

2. Is a verbal authority sufficient to warrant the defendant in making this distress?

The law recognizes a verbal authority to distrain, as of equal validity with a written one, noting, as the only ground of preference, that the latter is more easily proved. In giving to landlords the power of enforcing the payment of their rents by distress, it was not the policy to hamper with restrictions, inconsistent with its object, the due exercise of this speedy remedy. When rent is in arrear and unpaid, the landlord may enter immediately, by himself or his agent, and distrain any goods and chattels that are to be found upon the premises. Whatever may have been the oppressions and injustice occasioned upon the first use or abuse of the remedy, when it was introduced centuries back, a distress at this day is beneficial to all parties; for it is now no more than a summary mode of seizing and selling the tenant's property, to satisfy the rent which he owes; and the extent and manner of the operation have been changed and made entirely reasonable and just, and equally conducive to the security of the landlord and the protection of commerce. I may add, with respect to its general consequences, that the security which it affords to landlords is advantageous to tenants, by greatly increasing the facility of renting and moderating the terms. Again, the various provisions which have been made to check and remedy abuses protect the tenant in all his rights. If he is disposed to question the legality of the distress, he may either deny that any rent is due, or aver it has been paid; and this he may do by his writ of replevin, which authorizes the sheriff to take back the pledge, and deliver it to the tenant, on receiving security from him to prosecute the writ to effect, and to return the chattels again if he should fail. If he has nothing to say against the demand of rent, and is disposed to comply with his engagements, the law gives him five days after notice, before any further proceeding, and six days more before a sale can be made, to redeem his goods by paying his landlord what he owes him. In fact, distress becomes a summary remedy only, when every reason is wanting to the tenant for delaying to do what he ought, i. e., to render the rent due. The distress, in the first instance, is little more than a demand of the rent due, and notice of further proceedings unless it be paid. This may be made and given by the landlord, or by his agent or bailiff. What matters it to the tenant whether the agent's authority is in writing or by parol? It cannot affect his right to replevy; nor his remedy by action of trespass, in case the distress is made by one having no authority, or when no rent is due. Even the subsequent assent of the landlord gives authority to the agent by relation back to the time that he made the distress, and thus implicating the landlord in the responsibility of the transaction, redounds to the benefit of the tenant. It never has been held, that the agent to distrain may not be authorized verbally and without writing. On the contrary, although appointments by a corporation aggregate must be by deed, yet it has been held that a

corporation *may* appoint a bailiff to distrain without deed or warrant. I state the law, therefore, to be, that a parol or verbal authority *is* sufficient to warrant the defendant in making the distress in the present case. 3 *Kent's Comm.* 476.

But it is submitted by the defendant to the court, whether the power of attorney to Emanuel C. Reigart, on the 13th of May 1831, in which John B. Newman joins, is not a general power ; and, if it be so, whether the defendant had not, under this power, an authority in writing at the time he made this distress to make it as he did.

By this instrument, J. B. Newman nominates and constitutes Emanuel C. Reigart his true and lawful attorney, for the purposes aforesaid, i. e., for him, and in his name, to ask, demand, sue for, recover and receive from all and every person or persons whomsoever, within the county of Lancaster, in the state of Pennsylvania, all and every debt and debts, damages, sum and sums of money, arrears of rent, and other property and effects of every kind soever belonging to the said trust.    These are the purposes referred to ; and it seems to be impossible to deny, that they comprise an authority to distrain in order to recover the rent due and in arrear from George Franciscus. There is, indeed, no difficulty in perceiving that the several parties to this instrument had a somewhat unsteady apprehension of the extent and true quality of their estates.  But (as between themselves) there is an admission in the instrument itself, that the legal estate in these rents is in John B. Newman.    He, therefore, joined for the very purpose of giving the attorney in fact, a *legal* authority ; and having employed language adequate to that design, I have no hesitation in saying, he *did* confer upon Emanuel C. Reigart, by the letter of attorney under consideration, an authority in writing, which warranted the latter in making the distress in question.

Having thus given you my views and opinions of this cause, I commit it to you with a single remark : your duty is to find a true verdict according to the evidence ; and as your finding covers both the law and the facts involved in the issues, you are necessarily in some measure to decide on the law as well as the facts.    Considering the difficulty of many, we may say most, legal questions, the duty of a jury would be arduous, nay impracticable, if it were required that they should thoroughly investigate and comprehend the legal topics introduced into the discussions of counsel in trials at bar. This responsibility is not cast upon the jury.    This is the duty of the court ; and to the court you are entitled to look for the true evidence of the law involved in the cause, as you look to the testimony of witnesses and writings for the true evidence of disputed facts.

I shall be happy, gentlemen, if in this case I have succeeded in clearly and intelligibly furnishing you with the evidence of the law applicable to the questions which have arisen in this suit ; and now, having endeavoured to discharge my duty, I commend the case to you, in order that you may do yours.

If you find for the plaintiff, George Franciscus, you will assess

such damages as you may think right as a compensation to him for the taking and detention of the goods and chattels mentioned in the writ of replevin.

If you find for the defendant, Emanuel C. Reigart, you will find, first, the amount of the rent in arrear and due from George Franciscus, for his lot No. 508 ; and then, the value of the goods and chattels distrained, and subsequently restored by the sheriff under the writ of replevin.

The plaintiff below assigned for error the opinion of the court in their answers to the points on which they were requested to instruct the jury.

*Champneys* and *Montgomery*, for plaintiff in error.

*Norris* and *Jenkins*, for defendant in error, whom the court declined to hear.

The opinion of the Court was delivered by

KENNEDY, J.—Although the counsel for the plaintiff in error have assigned, numerically, no less than twenty-seven errors, yet they have, in their argument, reduced the number to five, which they rely on as being sufficient to obtain a reversal of the judgment.

1. That the court, on the trial of the cause, erred in permitting the defendant to exhibit a title different from that mentioned in his cognizance as bailiff of John B. Newman.

2. In not instructing the jury that the judgment in the action of partition in 1830 invested the parties thereto with the *legal title* to their respective interests in severalty.

3. In charging the jury that if they believed the testimony of general Cadwalader, it showed that the defendant had sufficient authority as the bailiff of John B. Newman to make the distress.

4. In instructing the jury that the written letter of attorney executed by John B. Newman and others to the defendant, gave him sufficient authority to make the distress.

5. In deciding that the plaintiff could not claim to have deducted from the amount of the rents, the taxes or any portion thereof paid by him, which had been assessed upon the lot of ground out of which the rent issued.

In regard to the questions involved in the first three of these errors, I do not know that any thing can be added to the very able and lucid argument of the learned judge of the district court, which would tend to show more clearly than he has done that they were decided correctly.  As to the first, there is really no foundation for it; because the title shown on the part of John B. Newman, for whom the defendant acted as bailiff in distraining for the rent in question, was perfectly consistent with all that was alleged in the cognizance. In that the defendant states the rent to have become due from the plaintiff by the enjoyment of the lot of ground therein described under a grant thereof from James Hamilton to Thomas Cookson, re-

serving the rent therein mentioned; of the latter of whom the plaintiff became assignee: and that John B. Newman became the assignee of James Hamilton, without specifying the several links in the chain of conveyance from Hamilton down to Newman, or showing distinctly by what means the latter became the assignee of the former. This was certainly not necessary, because the tenth section of the act of assembly of the 21st of March 1772, in order to get rid of the difficulties that arose in making avowries or cognizance upon distresses for rent, has made it sufficient for defendants in replevin to avow or make cognizance generally, without setting forth the title of the landlord or lessor. It is alleged, however, that the rent in question is a rent charge, and that this section of the act does not embrace it. It may be questioned whether it can be properly and strictly called a *rent charge* in Pennsylvania. It is known here specifically by the name of " ground rent," and is mentioned and designated by this name in our legislative acts. By the act of the 11th of April 1799, passed for raising and collecting county rates and levies, ground rents are specifically mentioned. The legislature, in designating and pointing out the various objects thereby required to be taxed, have not mentioned rent charge nor used the term at all: neither have they used any other that would seem to embrace it singly or in any other way whatever. For it cannot be pretended that it is included in the term "ground rent;" and if not, there is no other used bearing the remotest analogy to it: so that it would appear not to have been made the specific subject of taxation. And this perhaps may be accounted for from the circumstance that a rent charge, properly speaking, has been rarely known to exist in this state. A rent charge strictly, as I conceive, arises where a man being seised in fee of lands, grants a rent in fee or for life out of them, with a power to the grantee to distrain. And since the passage of the statute *quia emptores terrarum*, 18 *Ed.* 1, if the owner of lands in fee make a feoffment of them in fee, reserving by the same deed a rent to be paid to himself and his heirs with the right of distress, it has been considered in England a rent charge also. In some respects, however, these rents are certainly very different from each other: and particularly as it regards the consideration from which the payment of them arises. The payment of the first is founded upon a consideration actually paid to the grantor of the rent, and received by him at or before the time of granting it, which has no connexion with the enjoyment of the land whatever; and hence if the title of the grantor to the land upon which the rent is charged, prove defective, and he is evicted by a title paramount, still the rent is not extinguished, but must be paid. But in the second case the continuance of the rent and the payment of it depend entirely upon the right of the grantee to the *future enjoyment* of the land under the title conveyed to him by the grantor, to whom and whose heirs and assigns the rent is to be paid; so that if the grantee of the land, his heirs or assigns be evicted and deprived of the enjoyment of it by

[Franciscus v. Reigart.]

any one having a title paramount, the rent ceases and becomes extinct. And in this respect it bears a strong analogy to the rent in question; the consideration for the payment whereof may be said to be most emphatically the enjoyment which the plaintiff had of the lot, or at least the absolute and perfect right which he had to the enjoyment thereof under the grant originally made by James Hamilton. It is this that imposed upon him the obligation to pay the rent, and gave to John B. Newman, as the assignee of Hamilton, a corresponding right to demand and receive it, in the same manner as if it had been a rent service. A rent charge, on account of its being founded on a consideration altogether unconnected with the enjoyment of the land and being in nowise a return for the same, but made a charge upon it, was not favoured, and was considered as against common right. Ground rents, however, in Pennsylvania, have been looked upon very differently. They have been regarded rather favourably, and were introduced originally with a view to encourage and promote the improvement of the land granted whereon the rents were reserved, by requiring buildings and other improvements to be erected upon it. The object was certainly desirable, and I think it will not be denied that it has been attained by it. The great success which seems to have attended this mode of procuring the improvement of lands, shows its peculiar adaptation to promote the end intended; and instead of being laid aside or looked on with disfavour, has for this reason been greatly extended of late. Ground rents have never been considered here as being against common right, or as militating against any principle of either justice or sound policy. Under this view I am totally unable to discover any reason why they should be placed on the same footing here, that rent charges are in England. And although it has been decided in England in the cases of Lindon *v.* Collins, *Willes's Rep.* 429, and Bulfit *v.* Clarke, 4 *Bos. & Pull.* 56, that a rent charge is not embraced by the terms of the 22d sect. of 11 *Geo.* 2, *c.* 19, which is somewhat similar in its terms to the tenth section of our act of 1772, because the grantor of the rent, who was the party bound to pay it, *enjoyed no land under a grant or demise from the grantee* who was to receive the rent, which seemed to be requisite in order to bring the case within the terms of the section; yet a ground rent seems to come very fairly within its terms; for the tenant of the lot, of whom the rent is demanded here, has occupied and enjoyed it under a grant from one under whom the party demanding the rent claims as assignee. The section runs thus—" it shall and may be lawful for all defendants in replevin to avow and make conusance generally that the plaintiff in replevin, or other tenant of the lands and tenements whereon the distress was made, *enjoyed the same under a grant* or demise at such a certain *rent* or service during the time wherein the *rent* or service distrained for incurred, which *rent* or service was then and still remains due, without further setting forth the grant, tenure, &c." Now although the terms of this section may not literally embrace what was called a

rent charge before the passage of the statute *quia emptores*, yet it is evident that ground rents may well be included in the terms used : and as the evil intended to be remedied was *quite as great* in cases of distress for them as for any other rents ; we ought, therefore, to conclude that they were intended to be embraced. Indeed this ought to be the conclusion unless it were clear that they were intended to be excluded. And upon this principle it would seem that the statute of 11 *Geo. 2, c.* 19, has been held in some of its provisions to extend to a rent charge as well as other rents. For instance the twenty-third section, which authorizes sheriffs in the execution of writs of replevin founded upon distresses for rent, to take bonds with sureties of the plaintiffs, and to assign the same to the defendants in cases where the plaintiffs fail to prosecute their writs successfully, has been decided to embrace the case of a replevin sued out for goods dis-trained on account of a rent charge, and that the sheriff, in such case, may take a bond and assign it as in case of a distress for any other species of rent. Short *v.* Hubbard, 2 *Bing.* 349 ; 9 *Eng. Com. Law Rep.* 429. So in practice the first section of the act of 1772, which authorizes the sale of goods distrained for rent, has ever been considered as embracing ground rents.

It has also been objected that the title produced by the defendant on the trial, showed that John B. Newman was merely a trustee, and therefore at variance with the allegation contained in the cog-nizance. Substantially, the allegation in the cognizance is, that John B. Newman, as assignee, not meaning *necessarily* the *immediate* assignee of James Hamilton's right reserved in his deed of grant to Thomas Cookson of the lot of ground, was entitled to demand and receive the rent therein mentioned, which had accrued from the enjoyment of the lot by the plaintiff as assignee of Cookson, under the deed of grant from Hamilton to him. In short, that John B. Newman was legally entitled to demand and receive the rent as it became due; and if not paid, had a right to distrain for it. Now, although John B. Newman, by the terms of the deed of the 26th of August 1818, would be considered and treated in equity as a trustee, yet at law he must be considered the legal owner of the rent, and as having a right to receive and to enforce the payment thereof to him, when due, by any lawful means that he pleases to resort to. The rents being granted to him in fee for the *use of himself, his heirs and assigns,* to receive the same in trust for the benefit of others named in the deed, the statute transferring uses into possession does not operate on the second or ulterior use. At law it is considered repug-nant to the first use, which is in favour of Newman and his heirs; and it is in equity only that he will be considered a trustee. This second use, then, not being executed by the statute, he had an un-questionable right to distrain for the rent : so that in a legal point of view, the title of Newman to the rent, as disclosed by the evidence, accorded perfectly with all that was alleged in the conusance. We

therefore think that the counsel for the plaintiff have failed to sustain their first point.

As to the second, we think the direction given by the district court on the effect of the action of partition, and the judgment therein, was correct. The partition was intended to operate upon the equitable interests of the parties concerned, and not upon the legal title and rights in the estate.

In regard to the third point complained of as error, we also think that the instruction of the judge to the jury was perfectly correct in every particular. He told them, that if they believed general Cadwalader, his testimony established, most clearly, a parol authority given by Newman to the defendant to make the distress; and that such authority was all-sufficient. In this he is fully sustained by Lamb *v.* Mills, 4 *Mod.* 378 ; Trevillian *v.* Pine, 11 *Mod.* 112; Manby *v.* Long, 3 *Lev.* 107 ; *Br., Bailie, pl.* 2 ; *Ibid. Traverse, pl.* 3 ; 1 *Bac. Abr., Bailiff,* 366 (C.); Anonymous, 1 *Salk.* 191.

As to the fourth matter in which it is alleged that the court erred. It is wholly immaterial whether his honour the judge be correct or not in his construction of the letter of attorney, because it was not necessary, in the slightest possible degree, for the defence of the defendant. His authority to make the distress was most amply and decisively established without it, by the testimony of general Cadwalader, which went to the jury without the least attempt on the part of the plaintiff to disprove it, or to detract from its credit in any way whatever. Hence the jury were bound to believe it, and to give to it legal efficacy : and had they done otherwise, it would have been the duty of the court to have granted a new trial.

If, however, the authority of the defendant to make the distress for the whole of the rent due from the plaintiff had not been thus established, I am inclined to think that the letter of attorney would not have been sufficient to authorize it. From its tenor and purport it appears to have been given for the purpose of enabling the defendant to receive and collect that portion only of the rent due which was coming to Louis O'Bierne and wife, and not that coming to the other *cestuis que trust.*

The question embraced in the fifth point, or last error insisted on in the argument, presents no difficulty whatever. The counsel for the plaintiff, however, for the purpose of sustaining their proposition in relation to it, have referred us to the sixth section of the act of the 3d of April 1804, making every tenant who occupies or possesses lands or tenements liable to pay all taxes becoming due on them during his occupancy or possession ; and giving him a right to recover whatever he may pay in discharge thereof, from his landlord, by action of debt; or at his election to defalcate the same from the payment of the rent due to his landlord. This section of the act of 1804 is clearly not applicable to taxes assessed upon ground rents, but to taxes assessed upon lands. It must be observed that they are made separate and distinct subjects of taxation by the eighth section of the

[Franciscus v. Reigart.]

act of the 11th of April 1799. The propriety of this distinction is obvious, as I conceive, because they are separate and distinct estates in fee, belonging to different owners, and from their nature cannot be held otherwise; for the instant that they become united in the same person as owner thereof, the ground rent is thereby merged and extinguished. Had the taxes for which the plaintiff claimed a set-off been assessed upon the ground rent in question, there would have been some colour of equity in his claim. But that was not the case; they were assessed upon the land, or the lot, which was his own property, and therefore a charge; which, according to the spirit of the section relied on, he was bound to pay out of his own pocket. If he permitted the lot to be valued and assessed without making it known that he held it subject to the payment of the ground rent, the fault, if any, was his own, and he must therefore put up with the loss attending it; he cannot, certainly, on that account, claim a deduction from the amount of the ground rent. There is no ground, however, for supposing that that was the case; on the contrary, we must presume that it was rightly done, and that he got credit for the ground rent in the valuation made by the assessors of the lot preparatory to its being assessed as his property. But admitting that the assessors neglected to take an account of the ground rent, as they were required by the eighth section of the act of 1799; and that by this means it escaped being assessed and taxed; still it furnishes no sufficient reason why the ground rent landlord should bear any portion of the taxes assessed upon the lot. In order to charge a man with taxes, it must appear distinctly by the assessment that they have been assessed either against himself or his property, except in the case of tenants at will, or for a term of years, occupying lands, who are made liable to pay the taxes assessed upon such lands in the first instance, subject to the right of being reimbursed by their landlords.

The counsel of the plaintiff have cited in support of their proposition on this last point, the cases of Brewster *v.* Kitchin, 1 *Salk.* 198; 2 *Salk.* 615; S. C., 1 *Lord Raym.* 317; Peart *v.* Phipps, 4 *Yeates* 386; and Sandwith *v.* Desilver, 1 *Browne's Rep.* 221: but they have no direct bearing upon it. The question in Brewster *v.* Kitchin, was as to the extent of a covenant made by the tenant of the land, for paying a rent charge " clear of any taxes on the *land* or said *rent,*" 5 *Mod.* 369; and held that he was bound to pay the taxes on both, according to the terms of his covenant. The taxes in Peart *v.* Phipps were taxes assessed upon the *ground rent* and not upon the lot, which the grantee of the lot had covenanted to pay " clear of all charges and assessments whatever; and ruled that by the terms of his covenant he was bound to pay them. But it is clear, that if he had not bound himself by his covenant to pay these taxes, the owner of the ground rent would have been liable for them. The question in Sandwith *v.* Desilver appears to have been nearly the same with that in Peart *v.* Phipps, and to have been decided in the same way.

Judgment affirmed.