## SHERWOOD vs. PHILLIPS.

Where a *tenant* enters under a *demise for two years*, and continues in possession of the demised premises for the period of *nine years*, the *landlord* may, by *one distress*, distrain for the rent accrued during the whole time; and if the property be taken from his possession by a writ of replevin, he may, in *one avowry*, acknowledge the taking for the whole nine years, as upon one entire lease.

ERROR from the Washington common pleas. Phillips sued Sherwood in the common pleas, in an action of *replevin*, for the taking of a quantity of peas, oats and fire-wood. Sherwood made *cognizance* as the bailiff of J. C. Heartt and others, acknowledging the taking of the property in question as a distress for rent; averring that on the 14th July, 1819, Heartt and his associates demised certain premises to Phillips, *for the term of two years*, at an annual rent of $50; that Phillips entered, and, by virtue of such demise, was possessed of the premises from the day of the date of the demise for the *space of nine years*, ending on the 14th July, 1828, and continued to hold the premises by virtue of the said demise, at and under the said yearly rent of $50; and because the sum of $450, the rent of the premises for nine years, was due and in arrear, he entered, and took and distrained the property. To this cognizance the plaintiff below demurred. The declaration contains two counts: in the first the defendant is charged with taking two fields of peas, one field of oats, and a quantity of fire-wood, of the value of $200; and in the second count, with taking other the peas, oats and fire-wood of the plaintiff, to wit, 10 acres of peas, 10 acres of oats, and 20 cords of fire-wood, of great value, &c. The *cognizance* commences by acknowledging the taking the said goods and chattels, to wit, *the said two fields of peas*, one field of oats, and the said fire-wood in the said *second count* of the said declaration men-

tioned, in the said close in which, &c ; and then, after setting forth the demise, the entry of the tenant, the continuance of his possession, and that nine years rent was due and in arrear, it is averred that the defendant took and distrained *the said peas, oats and fire-wood in the said second count mentioned.* There were several *issues of fact* also joined, which were found by the jury for the plaintiff, and on which, as well as on the demurrer, the common pleas gave judgment for the plaintiff. The defendant sued out a writ of error.

*S. Stevens,* for the plaintiff in error.

*O. Clark,* for the defendant in error.

*By the Court,* SAVAGE, Ch. J. The question upon this record is, whether the cognizance demurred to is good or not.

The first objection is formal rather than substantial. It is this : The declaration charges the defendant with taking 10 acres of peas, 10 acres of oats, and 20 cords of fire-wood. The cognizance justifies the taking the *said two fields of peas,* one field of oats, and the said wood. It will be perceived that the cognizance describes the peas and oats as they are described in the first count of the declaration, and not in terms as in the second count, to which it purports to be an answer. I think, however, it is sufficient upon general demurrer. By striking out part of the description as surplusage, it justifies the taking *the said peas, oats,* and *the said wood.*

The second objection to the cognizance raises the important question in the case. It is this : It alleges a demise to the plaintiff for *two years,* and that he entered under that demise and held for *nine years.* It then acknowledges a distress for the whole nine years, when, as is alleged by the plaintiff, the holding for the first two years was under the demise, and the seven subsequent years occupancy was as tenant at will. The fact is admitted, that the plaintiff below took a lease for two years as tenant to Heartt and others, and after the expiration of the two years, continued to occupy the same premises for seven years more, without any new express contract ; and the question is, whether the landlords can distrain for the

whole nine years as one term. There can be no doubt that,as to the two first years after the demise, the plaintiff below held as tenant to the lessors in the lease. After the expiration of the lease, he remained in possession, occupying the land as before. In what capacity was he there? If he held *without any consent* of the landlords, express or implied, he was tenant at sufferance, and might have been considered by them as a trespasser, and turned out by ejectment without notice. 5 *Johns R.* 128, 9. *Cruise, tit.* 9, *ch.* 2, *sect.* 1. If he was in possession by the *express consent* of the landlords, without specifying any time, he was a tenant at will. If he was there by such *consent implied*, according to some authorities he was tenant at will; but courts have leaned against construing demises, where no certain term is agreed upon, as estates at will, but rather hold them to be tenancies from year to year, especially when an annual rent is reserved. 1 *Cruise, tit.* 9, *Estates at Will, ch.* 1, *sect.* 1. In *Rose* v. *Rees*, 2 *Black.* 1171, Ch. Justice De Grey said that all leases for uncertain terms are leases at will; but the reservation of an annual rent turned them into leases from year to year. The cognizance in this case states that the tenant continued to hold and enjoy the demised premises, by virtue of the demise, at the yearly rent of $50. This averment settles the question, as to the manner of holding by the tenant, to be by virtue of the demise, at an annual rent; of course he was tenant from year to year. He was there, however, as the defendant below says, by virtue of the original demise, and, as is to be inferred, not by any new express agreement. What then is the conclusion of law upon those facts? Did the occupancy under the lease for the term therein mentioned, and the subsequent occupancy without any new agreement for seven years, constitute the tenant a tenant from year to year? By the act for the prevention of frauds, passed in 1787, 1 *R. L.* 1813, *p.* 78, § 9, which is precisely similar to the 29*th Car.* 2, *ch.* 3, all *parol* leases of lands shall have the force and effect of the estates at will, except that leases for three years shall be valid, where the rent reserved shall amount to two thirds the improved value. By our revised statutes, the term is reduced to one year, in which *parol*

NEW YORK, May, 1835.

Sherwood v. Phillips.

NEW YORK, leases shall be valid. 3 *R. S.* 134, 5. The oldest case to
May, 1835.
which I shall refer is that of *Stanfill* v. *Hickes*, 1 *Ld. Raym.*
Sherwood    280, decided in 1697. The case was this : A. made a lease
v.
Phillips.    for a year, and so from year to year, as long as it should please
both parties. The lessee, having occupied the lands for two
years and more, is distrained for rent due the last of the two
years ; and the question was, whether the distress was law-
ful. It was decided that the distress was unlawful, because
the lease was at most a lease for two years, and afterwards at
will ; and the estates being different, the second estate cannot
be answerable for the debts of the first which was determin-
ed. This same case is reported in 2 *Salk.* 413, and the same
point is decided as above. But on the next page is *Legg* v.
*Strudwick*, decided in the 7th of Anne, about 1708, where, up-
on a similar lease, it was held that, after two years, either par-
ty might determine the lease ; but if the lessee held on, he
was not then tenant at will, but for a year certain ; for his
holding on must be taken to be an agreement to the original
contract, and in execution of it—and the first contract was
from year to year ; and also that the third year is not in the
nature of a distinct interest, because it arises from the same
executory contract. Such executory contract is not void by the
statute of frauds, though for more than three years, because
there is no term for above two years ever existing at the same
time. This last case is commented on and approved by Mr.
Justice Buller, in *Birch* v. *Wright*, 1 *T. R.* 380, who says that
*Stanfill* v. *Hickes* and *Bellasis* v. *Burbrick*, therein referred to,
were short, loose notes, jumbled together with others, and not
to be relied on. In the case of *Doe* v. *Bell*, 5 *T. R.* 471, the
lessor leased a farm to the defendant by *parol*, in January,
1790, for seven years—to enter when the former tenant quit-
ted, to wit, the land at *Lady-day*, and the house the 25th May
following, and to quit at *Candlemas*. The defendant entered
and paid rent. A notice to quit at *Lady-day* was served on
the 22d September, 1792. It was objected that the notice
was insufficient, the holding being from *Candlemas*, and the
plaintiff was nonsuited. On a motion to set aside this non-
suit, it was contended that the holding was from *Lady-day*,
and therefore the notice regular ; that as the lease for seven

years was void by the statute of frauds, being by parol, the de-
fendant must be considered a tenant from year to year, com-
mencing a *Lady-day*, when he entered. Lord Kenyon said,
that though the agreement be void by the statute *as to its du-
ration*, yet it must regulate the terms on which the tenancy
subsists in other respects, as to the rent and time to quit, &c.;
and that when a tenant holds over, after the expiration of his
term, without any new agreement, he holds upon the former
terms; and in the case before him, though the lease was void
as to the seven years, yet it could only be put an end to at the
time agreed on to wit, *Candlemas*. In *Clayton* v. *Blakely*, 8
*T. R.* 3, the defendant held by a *parol* agreement for twen-
ty-one years, and had been in possession two or three years.
It was contended that, under the statute, the holding was as
tenant at will. Lord Kenyon said such a holding now ope-
rates as a tenancy from year to year. The meaning of the
statute was, that such a holding should not operate as a term :
but what was *then* (that is, when the statute was passed)con-
sidered as a tenancy at will, has since been properly constru-
ed to enure as a tenancy from year to year. These cases
have heretofore been approved and adopted by this court. 2
*Cowen* 663. 8 *id.* 230. In *Abeel* v. *Radcliff*, 15 *Johns. R.* 505
it was expressly held, by Mr. Justice Spencer, that where a
tenant holds over, without any new stipulation between the
parties, an implication arises that there is a tacit consent on
both sides, that the tenant shall hold from year to year, at the
former or first rent. The court were divided in that case, but
not on that point. Ch. J. Thompson, who dissented from the
decision, says, on this point : "I have supposed no doubt
could exist, that, in the absence of any express agreement,
the implication of law would be, that each party assented to
a continuance of the tenancy at the same rent." The same
point was decided in *Bradley* v. *Covill*, 4 *Cowen*, 350. The
English cases above referred to are reviewed by Mr. Roberts,
in his treatise on the statute of frauds. *Roberts on frauds*,
241, 2, 3. It is there considered a correct position, that if
there be a *parol* lease from year to year, as long as both par-
ties please, this is a lease for one year certain; and that eve-
ry year after, it is a springing interest, arising out of the first

contract—so that if the lessee occupies ten years, these years make an entire lease for so many years; and if rent be due for one part of one year and part of another, the lessor may distrain and avow as upon one entire lease. By a computation backward, this may be said to be a lease for so many years; with this the statute has nothing to do, but only looks forward to parol leases for more than three years to come. The American editor has appended a note, in which he says; "They are leases for one, two, or more years, according to the form of the lease, dependant for their further continuance upon the will of the parties; and that such is their will, the law will presume, unless the contrary be evidenced by a regular half years notice to quit. The tenant so continuing in possession is not a mere tenant at will, but a tenant for years; it is the will of the parties that they should continue the tenancy for another year; his precarious interest is for such further term become certain, but he has still the same kind of estate which he formerly had." This seems to be the correct view of the subject, and according to the implied understanding of the parties. Applying these principles to the pleadings in this case, it follows that the occupancy in this case is to be considered as resting upon a valid lease for nine years. The right of the landlord to distrain is just as perfect as if there had been, in the first instance, a written lease for nine years. A parol lease, for a term longer than the statute authorizes, is void as to the term; and either party may put an end to it at the end of one year, under our present statute; but if, by the tacit consent of both parties, it has been continued for the original term or beyond it, rent is recoverable according to the terms of the lease, for the whole period of occupancy, unless barred by the statute of limitations. This is justice as well as law.

The cognizance demurred to is therefore good, and the defendant below was entitled to judgment upon it. Judgment having been given against him in the court below, that judgment must be reversed; and as this cognizance seems to go to the whole cause of action, the judgment in the court below must be reversed entirely, though several issues of fact were there found for the plaintiff below. If the plaintiff in error

succeeds on this cognizance, I apprehend he will be entitled to judgment upon the whole record ; but upon this question it is not necessary to express an opinion, further than as it seems to be a reason for reversing the entire judgment.

Judgment reversed, and *venire de novo.*