## Jones *against* Gundrim.

The assignee of a lease stands, as to his liability for the rent, in the same situation as the lessee; and if his goods be clandestinely removed from the premises, they may be followed and distrained for the rent.

Rent payable in iron may be recovered by distress.

A distress for rent may be made by parol authority; but if the warrant be written, the law requires no set form of words, more than will express the authority of the landlord.

Tenants in common, who make a joint lease to a tenant for years, may join in making a distress for rent.

ERROR to the Common Pleas of *Union* county.

George W. Jones against George Gundrim. Replevin. Leonard App and Henry C. Oyer, being the owners as tenants in common of a forge and lands, leased the same for a term of years to Joseph Allen, in consideration of the making of certain specified repairs, and the payment of one ton and a quarter of bar-iron. Joseph Allen assigned the lease to the plaintiff. App and Oyer made a landlord's warrant, directed to George Gundrim, which contained the following authority:

"These are therefore to authorize and require you to distrain the said ton and a fourth of bar-iron, and in default thereof, the other goods and chattels of the said Joseph Allen lying and being upon the said demised premises, or wherever the same goods and chattels may be found within the space of thirty days next ensuing the conveying away such goods and chattels from the said demised premises, and proceed to sell the same," &c.

After this warrant issued, Jones clandestinely removed 76 bars of iron from the premises, which the bailiff followed and distrained; and for which this replevin was taken out.

The payment of the rent was not alleged: but the plaintiff took several grounds of defence; that tenants in common cannot make a joint distress; that the warrant gave no authority to distrain the plaintiff's property; that the property of an assignee of the lease cannot be distrained anywhere but upon the premises.

LEWIS, (President), was of opinion that the positions taken by the plaintiff were untenable, and if the jury believed that the iron was clandestinely removed to avoid the distress, they should render a verdict for defendants, that they recover their rent.

*Greenough* and *Donnell*, for plaintiff in error. If a distress be made to compel the payment of rent, it must be for the value of the rent if it was payable in *kind*, and not for the thing itself; so

[Jones v. Gundrim.]

that if not replevied, the tenant may tender the value demanded. 2 *Rawle* 11 ; 13 *Serg. & Rawle* 52. Tenants in common must distrain and avow separately. 6 *Law Lib.* 206.

*Swineford* and *Jordan, contra.* Rent payable in *kind* may be distrained for, and the present warrant was in due form. *Act of* 1772 ; *Rob. Dig.* 172, *note* ; 5 *Binn.* 230 ; 2 *Rawle* 11 ; 10 *Johns.* 91. But if the warrant of distress was informal and insufficient, the landlords ratified the distress under it. 1 *Bac. Ab.* 366. There is no form required by the law : nothing more than a parol authority is necessary to make a distress. 4 *Watts* 98 ; 12 *Serg. & Rawle* 218 ; 4 *Serg. & Rawle* 467 ; *Bradby on Distr.* 78 ; 20 *Law Lib.* 30.

The opinion of the Court was delivered by

Huston, J.—This was an action of replevin, in which the plaintiff declared for taking one ton and a quarter of bar-iron, of the value of $100, and unjustly detaining, &c. The defendant avowed the taking as bailiff of Henry C. Oyer and Leonard App, for rent in arrear to them as landlords, &c. To this there was a replication that he did not owe the rent; and that Jones was not the tenant of Oyer and App; and that the property was not distrained on the demised premises; and that Gundrim was not the bailiff of Oyer and App, but took the property of his own wrong. Another set of the same, with the addition that the property was *bonâ fide* sold before the distress. Then follows a rejoinder, or replication, as it is called, negativing each assertion; and to this the plaintiff replied that he did not remove the property clandestinely with intent to prevent App and Oyer from distraining; that goods and chattels sufficient to satisfy the rent due by Allen to Oyer and App, remained on the premises. By all this no issue was formally made up; for none of the pleas, replications, &c. concluded with a verification, or to the country; but one would suppose the cause was put on the issue found on the last facts stated.

The object of special pleading is to bring the dispute to an assertion on one side and denial on the other, of some matter, the finding on which will decide the case. Special pleading in this State is seldom resorted to; and the use and object of it seem not to occur to lawyers; for where it is used, the parties go into evidence on all the points which can occur in the case, without any regard to what is concluded or admitted by the pleadings; and it would not be easy to find a more striking example of this than the present case.

Gundrim showed a lease from Oyer and App to one Allen; an assignment of the whole term by Allen to Jones; a landlord's warrant to Gundrim, and that under it he distrained on the iron and endorsed the distress on it. We were called on to say whether the lease to Allen constituted him a tenant. Nothing can be clearer—*doth let lease to said Allen*—now though the copulative

*and* is left out, it does not destroy a contract sealed and delivered; besides, the word *rent* occurs frequently in the instrument.

Next, it was alleged that the landlord's warrant was not in form so technically correct as it might have been. It is said to have been copied from some book of forms or precedents. It was decided by this court, in *Franciscus* v. *Reigart*, (4 *Watts* 98), that a bailiff may distrain under a parol authority. I would advise, however, for the facility of proof, that a written authority be given to the bailiff—a short piece of writing will suffice. If landlord and tenant are named, and a power to distrain for rent, it will justify him in making a legal distress for rent due. It would be right in some way to inform him how much rent is claimed, to prevent his taking an unreasonable distress. No form of warrant will justify a bailiff who acts illegally.

It would rather seem that App and Oyer were not apprised until about the time of the distress, or perhaps after it, that Jones was assignee of the whole term of the lease. An assignment was produced, however, of the whole interest of Allen, and proof that under it he entered and enjoyed the premises. It is unnecessary to state what were at one time the rights or responsibilities of assignees of tenants. The Statute 32 Hen. VII. cap. 34, introduced what is now the law on this subject. It would also be out of this case to state all the distinctions as to how far and in what cases the assignee stands precisely in the situation of the tenant who assigned to him. If the covenant or condition affect a thing *in esse*, parcel of the demise, it is immediately affixed to the estate, and binds the assignee, whether named in the lease or not. To pay rent is one of these things, and binds the assignee in all cases. This was settled so long ago as 3 *Salk.* 5, and I do not know that it was questioned until in this case; for this and many other purposes the assignee of the lease is precisely in the situation of the first lessee. In the language of Jones to App and Oyer, before the referees about this matter, who said he " had stepped into Allen's shoes, and was bound to perform the same things Allen was bound to perform;" this is at all events the law as to payment of the rent, and it answers what was made a point at the trial and here, viz. : that the landlord cannot follow the goods of a stranger if removed from the premises. Jones was not a stranger, but in law and in fact the tenant. By the Act of 21st of March 1772, sect. 6, it is provided that " in case any lessee for life or lives, term of years, or at will *or otherwise*, of any messuages, &c. &c., upon the demise whereof any rents are or shall be reserved or made payable, shall from and after the publication of this Act, fraudulently or clandestinely convey or carry off from such demised premises, his goods and chattels, with intent to prevent the landlord from distraining for the arrears of rent, &c. &c., it shall be lawful for the lessor or landlord, or any person empowered by him, within

[Jones v. Gundrim.]

thirty days next following such conveying away," &c. &c.—with a proviso as to goods *bonâ fide* sold. In this case the court left it to the jury whether this iron was clandestinely removed to prevent the landlord from distraining, and whether goods were left sufficient to satisfy the rent. The jury, on the clearest evidence, decided in favour of the landlord. It was not denied that the rent was due, nor pretended that it had been paid. The allegation that a distress could not be in this case, was answered by our decision in the case in 2 *Rawle* 11, 14, where it was held a landlord might distrain where the rent was to be one-third of the toll of a mill.

But there was another objection much insisted on, that the lessors were tenants in common, under our Act of Assembly abolishing survivorship, as between joint-tenants. Originally those making avowries in distress for rent were obliged to set out their title in the avowry and then prove that title as set out, and great nicety was required in this part of the case, and great difficulty in hunting up and proving old deeds. In the reign of George **II.** a statute was passed to remedy this; of which the 10th section of our Act of 21st of March 1772 is a transcript. "It shall be lawful for all defendants in replevin to avow and make cognizance generally, that the plaintiff in replevin, or other tenant &c. &c., enjoyed the same under a grant or demise at such a certain rent or service during the time, &c. &c., which rent or service remains due, without further setting out the grant, tenure, demise or title of such landlord or landlords, lessor or lessors, any law or usage to the contrary notwithstanding." Now, without saying what would be the law if a lessor would set out his title, it is sufficient to say, that in this case App and Oyer did not do so, but set out and showed a lease by them jointly; and that was all the law required, and all they were in this case required to show.

Let it not be supposed that I say, where the lease shows the lessors to be tenants in common, they may join in avowry. That is not before us. This is a joint lease, as to App and Oyer with Allen, whose assignee, Jones, is before the court. There was no occasion to deduce the title to Henry C. Oyer and Leonard App, or to go behind the lease made by them jointly, and to show the possession and occupancy under that lease.

Judgment affirmed.