By the Court, Cowen, J.
When this case was here before, (3 Hill, 547,) the decision turned on the construction of the pleadings. But it is now agreed that they are so amended as to raise the question whether the continuance of possession and the relation of landlord and tenant, in virtue of the second demise from the defendant to Griswold, operated as an enlargement or extension of the first, so that the. defendant might distrain for the rent of that year. The question stands clear of the 2 R. S. 412, § 1,2c? ed. This gives a right of distress within six months after the determination of the demise on which the rent distrained for accrued, and supposes it not to be continued in any way. The demise under which the rent in question accrued expired by its original limitation on the 31st of March, 1840. A lease for a year at a rent $30 less than the first was then made, beginning on the next day; and the distress was on the 11th of August, 1841. Thus more than a year had elapsed after the first lease had in terms expired, though the possession of the same tenant had in fact continued up to the day of distress. After the second lease expired, it was enlarged for still another year by endorsement. Thus the possession of the same premises, by the same tenant, under his relation as such to the same landlord, was continued in fact from the 1st of April, 1839, to the 11th of August, 1841, and it is upon this, as one term, that the defendant distrained. In this view, therefore—not on the six months statute—the defendant is put to maintain his right.
If the demise of 1839 and that of 1840 are to be regarded as entirely distinct and independent of each other, the right of distress for the rent due under the first was gone, at least after six months from the first of April, 1840, if not on that very day. Nothing is more clearly settled by the common law than the tenant’s exemption from distress after his term has expired. This was so well understood when Coke wrote his Commentaries, that, to save a remedy by distress for the last year’s rent of the *23 term, the landlord reserved it at some day before the term had ended. (Co. Litt. 47, b. ; and see Pennant's case, 3 Rep. 64.) In one case the rule was applied where the tenant held over under a lease from year to year. (Stanfill v. Hickes, 1 Ld. Raym. 280; 2 Salk. 413, S. C.) The tenant, having occupied two years and more, was distrained for the rent of the first year; and the landlord was punished as a trespasser, the holding over after the second year being deemed a distinct lease at will. This was in the 9th year of Wm. 3d. A few years after, however, (7th Ann) the case was overruled, all the time of occupation under a lease from year to year being considered as an extension of the original agreement, and the whole malting but one term. (Legg v. Strudwick, 2 Salk. 414. See also Belasise v. Burbridge, in 7 Wm. 3d, 1 Lutw. 213, 214.) Shortly after these cases came the statute 8th Ann. ch. 14, §§ 6, 7, the recital in which is as follows : “ Whereas tenants pur auter vie and lessees for years, or at will, frequently hold over the. tenements to them demised, after the determination of such leases; and whereas after the determination of such or any other leases, no distress can by law be made for any arrears of rent that grew due on such respective leases before the determination thereof.” (12 Pick. St at. at Large, 69.) The statute then goes on to enact that the person having previous rent in arrear may distrain within six months if the possession of the tenant continue &c.
This statute speaks in general terms of the right to dis-train for rent due on the previous lease being gone on the determination of that lease; and this although the tenant hold over. It was necessary where the landlord was desirous to dis-train without that act being construed into a continuation of the lease for an additional year. In such case he might bring ejectment against the tenant or disavow an intent to continue the relation of landlord and tenant. If the latter would, notwithstanding, continue to hold, he might be distrained Avithin six months. The right to distrain is thus made to depend on the continuance of the possession without right, or permissively for a special purpose. (Nuttall v. Staunton, 4 Barn. & Cress. 51; 6 Dowl. & Ryl. 155.) It is now entirely settled, according to the *24 case of Legg v. Strudwick, that where the holding over is under an original agreement from year to year’, the statute has no application. And where the tenant holds .over with the consent of the landlord, express or implied, the law seizes on that circumstance, and construes the holding to be in pursuance of such an original agreement. The older books seem to be that the mere fact of distraining for rent without explanation, operates as a waiver of the tort and converts the tenancy into one from year to year, or at least operates as an extension of the last year'of the term. Keilwey reports a case to this effect so early as the 22 Hen. 7th. I say a case; perhaps it may more properly be called a strong dictum. I cite from Keilw. 96, of which, the following is a translation: “ Note. It was clearly agreed by all the justices of the common pleas that where I make a lease for the term of a year reserving certain rent, and afterwards the year is ended, and the termor holds over, I may distrain him for my rent notwithstanding that the term be passed. And also, if I will, I may distrain the beasts for doing damage.” True, he refers to what Hankford and Hill said in 14 H. 4,fol. 31, as contrary; but they do no more than lay down the general rule that you can not distrain after the term is passed. They say nothing of holding over. Rolle, in his Abridgment, (1 JRolle’s Abr. 672, pi. 10,) misquotes when he makes them talk of holding over; and what he imputes to the court in Harrison v. Metcalf does not appear by the report of the same case in Cro. Jac. 442. Beside, he admits that Keilwey is against him. Nor has Rolle been implicitly followed by modern writers who have studied the question. Bradby says, referring to Keilwey, “ If the tenant hold over, it seems to have been considered that the lease was so far continued as to warrant a distress for the rent.” (Bradb. On Distr. 127, N. Y. ed. of 1808.) I understand the justices, as reported by Keilwey, to mean that, if the landlord distrain for the rent, this is an adoption of the distrainee as his tenant, though he may also disavow the tenancy and distrain for damage feasant. This accords too with the general doctrine that you may waive a tort and take your remedy as upon a contract. Why should the tenant be allowed to defeat, the recovery of the rent *25 he owes by gainsaying that side of the question most favorable to him?
It is very difficult to perceive any reason for the application of the general rule, where the original relation continues in fact, though upon consecutive demises made from year to year; and clearly, since the statute of Anne, if not before, the inclination of the courts has been to look upon such a state of things as one continuous demise springing out of the intention of the parties as it existed at the first start. All the years of actual holding subsequent to the first, are brought in with that, and the whole are computed as one term. Take the case of a parol demise for twenty years. This is a nullity by the statute of frauds; but the parties renew it from year to year, by the mere act of holding over for the whole time. The law then counts back and adjudges the series to be a term of twenty years ab initio. (Birch v. Wright, 1 T. R. 378, 380.) In this case Buller, J. expressed himself thus: 14 If a tenant from year to year hold for four or five years, either he or his landlord, at the expiration of that time, may declare on the demise as having been made for such a number of years.” The doctrine, as I have stated it, is summed up in Bradby On Distresses, 103, and in Rob. On Frauds, 242. All the English cases which thus consolidate the several years of actual holding into one term, have proceeded on demises which are said to run de anno in annum quam diu ambabus partibus placuerit. Most of them are cited in Bac. Abr., Leases, (L) 3. But they do not require an original demise in these words. They look to the course of occupation and the conduct of the parties as it has gone on for a certain number of years; and assuming that there was no such express demise, (in some cases there could have been none for the full term, the whole resting in parol,) they mould the whole into a single term for all legal purposes. It may be pleaded as one entire term, in debt for rent, and in an avowry, or justification of a distress. The landlord may, of course, distrain for the whole time; not because there was an actual lease in the first instance, but it has become so constructively and ex post facto. The premises have been held from *26 year, to year by tacit renewals ; and all the years are now, for every purpose, by relation adjudged to make a continuous term. It has become in substance and effect one term. These principles have been adopted in their full extent by this court. (Sherwood v. Phillips, 13 Wend. 479, 483, and the cases there cited.) That case was of a demise originally for two years only, and the cognizance alleged an entry under such demise, a holding for nine years, and a distress for the ..whole. The cognizance was held valid as pleading a single term of nine years. Yet there was effectually a new lease at the end of every year. One term of nine years was made by the law from eight leases, of themselves entirely distinct, and which the parties might have kept distinct by an express declaration that they should not run into one another. When the present case was before us in October term last, we held that the principle applies, though the first lease be by deed; and that, where the tenancy is in fact continued by occupancy or holding over, it was no answer to say that the original demise was ended. It was doubtless gone in its terms; but enough was pleaded to show how it had ceased. Taking the whole facts together, it had resolved itself into a demise for two years or more. It had, in other words, determined, by becoming part of and being lost in a longer term.
We are then brought to inquire where is the difference in principle between the case as now spread out, and the cases heretofore decided? What is the case made out by the pleadings ? A sealed lease from April 1st, 1839, to April 1st, 1840. Another sealed lease from that time for another year, and still a third in express continuation of the second to a third year. Then, in the course of the second year, a distress for the rent which accrued during the first year. What is there in the nature of the case to prevent us from taking a stand at the time , of the distress, and, in the words of Roberts On Frauds, computing backwards according to the acts of the parties ? Had the renewal for the second year been by implication, it would, according to the language of the writers, be construed to spring out of and continue or enlarge the first lease. Shall an express. *27 renewal for a year have a less important effect, whether oral, in writing or under seal 1 There is just as much room for implication and constructive continuation in one case as in the other. If, in the case at bar, it be said, expressum facit cessare taciturn, the same thing might have been said of Birch v. Wright. If an original agreement to continue from year to year be necessary, it is as easy to imply one that the lease should be renewed by deed at the pleasure of the parties so long as they shall please, as that it should be renewed by parol. Nor does a difference in the amount of rent break the continuity. The same lease may reserve more or less rent for different years. No one will deny that a lease continued from year to year, by a new annual contract between the same parties concerning the same premises, is the same im substance as if the whole time had been marked out by a single lease. It is in fact a lease from year to year so long as both parties please. Then minds have met upon such a course; and we all know that in a great majority of cases it is what they both intend from the beginning. Where the demise is under seal, notice to quit may not be necessary, nor is this essential to a tenancy from year to year. The party to be benefitted may waive it, as perhaps he does by sealed renewals, or renewals in writing defining the term. This takes nothing from the grand total of consecutive years; years which have practically run into one another, and which it is just in respect to the remedy that the law should regard as one term. Neither the right of the landlord and reversioner on one side, nor of the tenant in possession on the other, can at this stage be regarded as having been intermitted ; or if broken, the momentary interval has been amended and waived. The privity of estate has all along continued, and this seems to be the only essential requisite, whether it be so continued by original stipulation, by subsequent agreement or by custom. In Beavan v. Delahay, (1 H. Bl. 5,) there was a custom for the tenant to continue in a partial control and pos session beyond his term, for the purpose of harvesting and housing his away-going crop. It was held that, although the demise was discontinued as to all the premises except what was necessary for this purpose, yet the" crop thus housed might be *28 distrained.' Lord Loughborough likened the case to a holding over with the implied assent of the landlord; and a distress was allowed after six months. The case was not put on the statute of Anne. Indeed the court seemed to recognize the doctrine I have extracted from Keilwey. The chief justice said: “ It has been often determined that if there be a lease, and after the determination of it the tenant holds over, he must hold upon the terms and liable to all the conditions and covenants in the lease. The rights, therefore, of the landlord must in such case continue. Now it is not material whether the interest and com nexion between the landlord and tenant be extended by such holding over, or by the operation of a custom like the present.” By this case we are justified in saying that the mode of continuing from year to year does not change the effect; nor does the alteration of time, for the continuance by the custom was for only a part of the year; nor does the difference of territory, which there came down to a part of the out-houses instead of the farm. The relation of landlord and tenant, continued from year to year or less, at the pleasure of the parties, in whatever form, although under modification as to the extent of the premises or the amount of rent &c., presents the same case for the purposes of the remedy as if the whole were expressly incorporated in the original contract. The privity, says Bradby, must continue; and the landlord cannot distrain after the determination of the lease; but this writer allows, as we have seen, that a holding over, even at common law, continues the privity. (Bradb. On Distr. 127.) In the case at bar, the privity always continued from the first demise down to the time of the distress. I will not say that successive leases for more than a year can be regarded as making one entire term. But that they do make only one where they continue from year to year or for a less time, seems to be abundantly settled by the cases. The reason for the distress being allowable in Beavan v. Delahay, as rendered by Gilbert On Distresses, p. 59, Lond. ed. of 1794, is that “ the interest and connexion between the landlord and tenant continued.”
Books were cited for the plaintiffs on the argument, to show that, where the tenant accepts a new lease during his term, to *29 commence presently, this is an implied surrender of the subsisting lease. Their application, to a case of renewal from year to year is not perceived.
On the whole, therefore, I do not entertain a serious doubt that a substantial right to distrain is presented by the pleadings.
.The demurrer is to the defendant’s replications. But the plaintiffs have a right, as they claim", to go back to the avowry, and if that fail to show that the right of distress has been exercised according to law, they may yet succeed, on the ground that the party who commits the first fault in pleading must have judgment against him. It is insisted that since the 2 R. S. 412, 2d ed., §§ 3 and 8—the first section requiring that every distress for -rent shall be made by a sheriff, deputy, constable &c., and the last that neither of these shall distrain without an ■affidavit of certain facts being annexed to the warrant of distress—it is necessary to show in the avowry that the distress was made by the proper officer, holding the proper affidavit at the time.
With regard to the agent, I think the only effect of the statute is to narrow the circle of selection. At common law the landlord distrained either by his own hand or that of his bailiff, the latter being but another name for an attorney or servant. In either case the landlord was the responsible actor. He might be, as he is in this case, treated in replevin as the sole taker; and he avowed, as he does here, in his own name. He might direct his warrant to any one capable of acting as an attorney in fact, or confer an authority by parol. (Franciscus v. Reigart, 4 Watts, 98, 113, 119; Jones v. Gundrine, 3 Watts & Serg. 531, 533.) Ordinarily, however, the warrant was in writing, and directed to some person accustomed as an ■officer to the collection of debts by execution. The statute has, therefore, done no more than render compulsory what was, before its passage, nearly universal in practice. The landlord is •still the distrainor. The remedy is still by the act of the party interested, not by process of law; and he is accountable for any irregularity or oppression of the agent, although not specially directed or adopted by him. All this should be so for the sake of the distrainee; who more commonly finds his landlord bet *30 ter able to respond than the officer he employs. The statute has not even made it compulsory on the officer, at least not expressly, to undertake the duty; and, however regular the papers on their face, no one would pretend that they will operate as a protection unless his principal has a right to distrain.(a) In making cognizance, he must, therefore, go back to the right of his principal, and show it as folly as the latter is bound to do in his avowry. No doubt the distrainee may, since the statute, plead either to the avowry or cognizance that the distress was not made by the proper agent; but if he omits to do so, he concedes that the act of distraining was done by the proper person; and thus stakes the controversy on the merits, where it is always desirable that it should be placed.
As to the necessity of pleading the affidavit, this was certainly taken for granted by the pleader in Christman v. Floyd, (9 Wend. 340;) and in Burr v. Van Buskirk, (3 Cowen, 263, 271,) Mr. Justice Woodworth inclined to think the averment of an affidavit necessary, under a statute similar to the one in question. It was not pretended, on the argument, however, that the question had been definitely passed upon by this court, in any case; and I am aware of none in which it has. If the pleader set out an affidavit, and it appear to be defective, as in the case first cited, the avowry may, according to a well established rule, be attacked by a demurrer, whether the allegation be necessary or not. By attempting too much, and doing the extra work defectively, the party discloses the vice which must otherwise have awaited an exhibition in some other form or at a more appropriate stage of the proceeding. In the case last cited there were various defects in the merits of the avowry. Two previous heads had been examined under which the right to distrain goods off the premises, a right created by statute, was considered. In such case the pleader must undoubtedly *31 show that he proceeded in exact conformity with the special law out of which the right was derived. If he had shown this, however, he put himself on the same footing as if the goods had been upon the premises; and to say generally, that a mere change by statute in the form of an authority to distrain, works a change in the form of pleading, would, I apprehend, be to depart from a rule not only well established, but which calls for enforcement on principles of certainty and convenience. I have already noticed the variety of form allowed to the distress warrant by the common law; and shown that, by confining its direction to a particular agent, neither the legal effect, nor the form of pleading is changed. The same arguments are iri some measure applicable to the objection that the affidavit' is not set out. The general right of distress is founded upon the common law; and the first avowry of this defendant professes to stand entirely upon that law. As to the second, which avows a distress made off the premises, the defendant was placed by statute on the same footing as if the goods had remained. The general right in respect to both was the same. A simple authority from the landlord, oral or written, was all that the common law required. In pleading by way of avowry, it was not mentioned. The tenant charged the taking directly on the landlord who avowed it. In making cognizance too the defendant set it forth no otherwise than by a general averment that he took the goods as the bailiff of him who had the right. Then came the statute in question, the effect of which is undoubtedly to render a written authority necessary, backed by an affidavit. In short, that right or authority must now be evinced by writing in a certain form, which before was valid without. The legal effect is, however, the same as before. The thing spoken of is the same, an authority to distrain; and when you characterize it by the same words in pleading as were allowable before the statute, you speak of it as the law knows and deals with it. By a proper plea to the avowry or cognizance (and the plaintiff may plead several pleas) the defendant can always be put to show in evidence that the creation of the authority brings it up to the denomination expressed or implied by the language of the defence. But the mere statute addition of a *32 formal requisite, however essential to the validity of an instrument before known to the law, has never been holden to change the form of pleading. The contrary is perfectly well settled; and has long since grown into a general rule. It is thus stated by an eminent pleader: “ With respect to acts valid at the common law. but regulated, as to the mode of performance, by statute, it is sufficient to use such certainty of allegation, as was sufficient before the statute.” (Steph. On Pl. 376; Id. 332, 1st ed.) A familiar illustration arose on the statute of frauds. (Anon. 2 Salk. 519 ; 12 Mod. 540, S. C., nom. Birch v, Bellamy.) Holt, C. J. says, that you need not state a collateral promise to be in writing; whereas, if a thing is originally made by act of parliament, and required to be in writing, e. g. a devise under the act of Hen. 8, you must plead it with all the circumstances required, by the act. The rule is too familiar to demand much illustration. It is acted upon daily, and indeed in this very action, wherein the defendant constantly avows upon a lease for any number of years without any question being made because it is not shown to be in writing. It would indeed be singular if a statute, requiring a certain form for the very substratum o'f the avowry, may be thus overlooked; and. yet another, demanding a formality of very trifling comparative importance, should be held to bring in an embarrassing incumbrance to the special pleader. The purpose was quite obvious— a sort of preliminary proof by the landlord’s oath to restrain him from unfounded distresses. As was said by Holt, Ch. J., in the case cited from Salkeld, it is matter of evidence, not of pleading. I know it has been holden that the particular form required by such statutes may be drawn into question by pleading. You may plead even the statute of frauds; but it is unnecessary. You may in all cases set forth the common law contract or instrument with the additional circumstances demanded by the statute; but the safer and better way of pleading is to follow the established precedents. (See 1 Saund. 211, note (2); id. 276, note (1), and 276, a., note (2).) The rule is laid down in Bac. Abr., Statute {L.) 3, in nearly the words which I have taken from Stephen. I do not stop to show by authority that the warrant from the landlord to his bailiff was *33 a creature of the common law, whether the distress it was intended to authorize was to- be made on’ the premises or off. The right to distrain in the latter case is indeed given by statute ; but the form of delegating the power to another was never made the subject of statute regulation till the act requiring an affidavit. The statute, in the language of the rule as laid down by JBac. Air. at the place already cited, makes a certain circumstance necessary to the validity of an act which was valid at the common law without such circumstance. This, the book adds, does not alter the manner of pleading which was used before the making of the statute.
It follows, that both the avowries in question are in proper form.
If the views I have taken of the pleadings demurred to be correct, judgment must be rendered for the defendant.
Judgment accordingly.

o) This must be because the officer is regarded as a volunteer in the execution of the process. (See Jermaine v. Waggener, 1 Hill, 285.) Otherwise had the duty of executing it been rendered compulsory upon the officer. (Roberts v. Tennell, 4 Litt. Rep. 286, 288.)