## WEBBER & CODY *vs.* SHEARMAN.

The right to distrain for rent terminates at the expiration of six months from the end of the term, and is not continued by the execution of a new lease to the same tenant for a further term, commencing at the end of the first.

Accordingly where, on the expiration of a demise under seal for a year, the landlord executed a new lease to the tenant for another year at a different rent, and on the expiration of the latter the term was extended for a third year: *Held* that the landlord could not distrain during the third year for rent which fell due at the end of the first.

ON error from the supreme court. Webber & Cody sued Shearman in the court below in replevin. The defendant pleaded *non cepit* and several special pleas, which resulted in issues of fact, and also put in two avowries. The plaintiffs pleaded several pleas to each avowry, upon which, except the first plea to each avowry, issues of fact were joined. The defendant replied to the first plea to each avowry, and the plaintiffs demurred to the replications. The issues of fact were tried in September, 1842, when the jury found the issue of *non cepit* and those arising upon the defendant's special pleas, in favor of the plaintiffs; but they found the issues of fact growing out of the plaintiffs' pleas to the avowries in favor of the defendant. In October term, 1843, the court below, after argument, overruled the demurrer to the replications, and gave judgment for the defendant upon the whole record, and awarded a return of the property replevied, to the defendant. The substance of the pleadings ending in demurrer is stated in 6 *Hill* 20 *et seq.* where the opinion of the court is also given. The plaintiffs brought error to this court.

*T. Jenkins,* for the plaintiffs in error.

*C. P. Kirkland,* for the defendant in error.

TALCOTT, Senator. The distress was sustained in this case by the supreme court, upon the ground that a new term was not created by the demise of 1840, but that the tenancy which followed this demise was, in legal effect, a continuation of the previous tenancy created by the demise of 1839. The question, in the form in which it is here presented, has not before been the subject of adjudication in our courts; and as it extends the right of distress, in the view taken of it by the supreme court, to a large class of cases, in which that right has not heretofore been supposed to exist, it becomes one of much interest.

It is stated in the opinion of the supreme court, that "nothing is more clearly settled by the common law than the tenant's exemption from distress after his term has expired," and the principle is well established by the old authorities. Until after the English statute, (8 *Anne, ch.* 14, §§ 6, 7,) it made no difference with the landlord's right of distress, whether the possession of the tenant ended with his term, or was continued after it had expired. In either case the right of distress ended with the term and could not be revived, either by the holding over of the tenant, or by a new demise of the same premises. In *Bradby on Distresses, ed. of* 1828, *p.* 90, the common law doctrine is thus stated: "If a tenant hold, up to a certain period under one demise, and afterwards his possession is continued under another, although each demise be made only by parol, a joint distress should not be made for the rent accrued under the two demises." So in *Bac. Abr. Distress,* (*A.*) "If a tenant *per auter vie,* or tenant for years, held over, yet the lessor could not distrain them for rent that became due before the determination of their respective leases, though they continued in possession of the land afterwards: for when the lease was determined, the lessor could not avow on them as his tenants, claiming under a lease which was determined." (*See also Com. Land. & Ten.* 376; *Stanfill* v. *Hickes,* 1 *Ld. Ray.* 280; *Bradby on Dist.* 89.)

The case of *Legg* v. *Strudwick*, (2 *Salk.* 414,) which was decided a few years prior to the statute of Anne, though it overrules the previous case of *Stanfill* v. *Hickes*, does not conflict with the prior well settled doctrine just adverted to. In that case the holding was under a written lease which by its terms was to run from year to year as long as it should please both parties; and it was held that however long the tenancy should continue under that demise, it would constitute but one term; the parties having chosen to exercise the power given them by the lease, of extending it over a period of several years, though either of them could have terminated it at the expiration of two years.

An anonymous case in *Keilway*, as old as the 22 *H.* 7, (*Keilw.* 96,) has been relied upon to support the doctrine that when the termor held over, he might be distrained for the rent of the previous year. The report of this case is exceedingly imperfect and unsatisfactory; so much so, indeed, that Mr. Justice Cowen expresses the opinion that it may more properly be called a strong dictum than a case. The editor of *Bradby on Distresses*, (*p.* 90, *note*,) thus speaks of the case: "As it was about this period of our history that tenancies from year to year as they now exist, first began to be acknowledged, it is not improbable that this decision had reference to a holding of that nature, and remains one of the first cases upon record, in which that species of holding was recognized. It is difficult, upon any other ground, to discover the principle of the decision. It is opposed to every older authority, and is directly at variance with the statute of Anne, and it seems to have excited the surprise of the reporter himself, who refers to previous authorities, all of which, however, relate to leases for years." The statute of Anne, above referred to, is as follows: "And whereas tenants *per auter vie* and lessees for years, or at will, frequently hold over the tenements to them demised, after the determination of such leases and whereas, after the determination of such or any other leases, no distress can by law be made for any arrears of rent that grew due on such respective leases before the determination thereof; it is hereby further enacted, that it shall and may be

lawful, for any person or persons, having any rent in arrear, or due upon any lease for life or lives, or for years, or at will, ended or determined, to distrain for such arrears, after determination of the said respective leases, in the same manner as they might have done, if such lease or leases had not been ended or determined. Provided, that such distress be made within the space of six calendar months after the determination of such lease, and during the continuation of such landlord's title or interest, and during the possession of the tenant from whom such arrears became due." (12 *Pick. Stat. at Large,* 69.) It is abundantly evident, both from the recital and the body of this act, as well as from the uniform language of the cases prior to its passage, with the single exception of the case in *Keilway,* that up to the time of its passage the right of distress ended at the termination of the lease, although the tenant might continue in possession, by holding over or otherwise.

Subsequently to this period, the English courts have extended the doctrine of *Legg* v. *Strudwick* to parol demises of the character of the written lease referred to in that case. *Roberts,* in his *Treatise on Frauds,* (*p.* 242 *et seq.*) thus lays down this doctrine : " If a parol lease be made *de anno in annum quamdiu ambabus partibus placuerit,* this is adjudged to be a lease only for one year certain, and that every year after it is a springing interest, arising upon the first contract, and parcel of it ; so that if the lessee occupies ten years, these years, by computation from the time past, make one entire lease for so many years ; and if rent be in arrear for one part of one of those years, and part of another, the lessor may distrain and avow as for so much rent in arrear upon one entire lease, and need not avow as for several rents, due upon several leases, accounting each year a new lease ; for it has been adjudged that after the commencement of each new year, it becomes an entire lease certain for the years past, and also for the year entered upon, so that neither party can determine it before the year is run out." The same rule has also been adopted in England in relation to parol demises for more than three years. (*Birch* v. *Wright,* 1 *T. R.* 380 ; *Doe* v. *Bell,* 5 *id.* 471 ; *Clayton* v. *Blakey,* 8 *id.* 3.) These

leases, though void at their inception by the statute of frauds, are yet held to be made good by the assent and acts of the parties, for as long a period, within the limits of the original term, as the tenancy shall in fact continue. In other words, they have been held to be valid leases "from year to year as long as it shall please the parties," upon grounds similar to those above quoted from Roberts.

No case has been cited from any of the English reports, in which the tenancy was continued beyond the term originally agreed upon by the parol demise, but they doubtless establish the doctrine which was derived from them by the supreme court, in the case of *Sherwood* v. *Phillips,* (13 *Wend.* 479.) In that case there was a demise for two years at a fixed annual rent, and a continuance of the tenancy for the period of nine years, without a new lease, or any change of the original contract. After a careful review of the decisions of the English courts as well as of those in this state, Chief Justice Savage came to the conclusion that the case was within the principle of the later English decisions above referred to, as well as those of our own courts, by which those decisions had been previously adopted in this state, and held, that by the continuance of the tenancy, after the expiration of the lease, the parties had impliedly agreed to extend the limits of the original demise, so as to embrace the seven succeeding years; constituting the whole period one entire term, as effectually "as if there had been, in the first instance, a written lease for nine years." This decision, however, while it certainly extends the right of distress as far as it had ever before been allowed either here or in England, falls very far short of establishing the doctrine contended for by the defendant in error, in the case under review.

In the case now under consideration the parties did not choose to submit themselves to the legal implications which would have arisen from a tacit holding over by the tenant, after the expiration of the first lease, but at the precise point of time when this lease would have begun to extend itself over the succeeding year, by virtue of the expansive power conferred upon it by the decisions of the courts, the parties entered into a distinct and

Webber *v.* Shearman.

independent lease in writing and under seal, varying in some essential particulars from the provisions of the prior one, and specifying the terms and conditions of the subsequent holding. The turning question in this case then is, whether the tenancy subsequent to April, 1840, was under the lease which was then entered into, or under the one which had then expired : or, in other words, whether the express agreement of the parties, or the one which the law would have created for them, in the absence of an express agreement, shall prevail. If the old maxim, *expressum facit cessare tacitum,* be applied, and the full effect which its language plainly imports, be given to the second lease, a new term was thereby created, as distinct from the prior, expired term, as this latter was of the term of the preceding tenant : in which case the right of distress for the rent which fell due in April, 1840, ceased, under our statute (2 *R. S.* 500, § 1,) at the expiration of six months from that time. I have found no case until the decision now under review, in which the execution of a new lease has been held not to create a new term. On the contrary, the doctrine was well established at common law, that if a lessee took a new lease from his lessor before the expiration of his current term, it operated as a surrender of the subsisting lease, and if the new lease was to commence *in futuro* it even gave the lessor the right to enter and to take the profits in the interim. (*Hutchins v. Martin,* Cro. *Eliz.* 605 ; *Ive's case,* 5 *Rep.* 11, *b. ; Com. Land. & Ten.* 340.)

The judgment of the supreme court appears not only to be inconsistent with this doctrine, but in conflict with the great body of prior decisions, bearing upon the point in controversy, and should therefore, I think, be reversed.

Senators WRIGHT and JOHNSON also delivered written opinions in favor of reversing the judgment of the supreme court, upon grounds substantially the same as those stated in the opinion of Senator TALCOTT.

On the question being put, " Shall this judgment be reversed ?" the members of the court voted as follows :

*For reversal :* The PRESIDENT, and *Senators* BACKUS, BEEKMAN, BEERS, BOCKEE, CORNING, DEYO, EMMONS, FAULK-NER, HAND, HARD, JOHNSON, JONES, LESTER, LOTT, MITCH-ELL, PORTER, SMITH, TALCOTT and WRIGHT—20.

*For affirmance :* *Senators* FOLSOM and SCOVILL—2.

Judgment reversed.