MAURICE McQUINN et al., Respondents, v. CHARLES E. LOGUE, Appellant.

**Kansas City Court of Appeals, May 2, 1910.**

1. **LANDLORD AND TENANT: Lease: Notice.** Where a lease provided for a tenancy at a certain rent for a definite period of one year and "so long as mutually agreeable to the parties hereto, on the same terms and conditions," it created a term of at least two years and became a tenancy from year to year, and can only be terminated by sixty days notice prior to the end of any year.

2. **DAMAGES: Rents and Profits.** In an action for unlawful detainer for a part of a larger tract, it is error to admit evidence of damages to the entire tract. And where there is evidence of the value of the rents and profits to the portion in dispute, but none as to damages to that portion, it is error to include damages in the judgment.

Appeal from DeKalb Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

REVERSED.

*Hewitt & Hewitt* for appellant.

*Frank B. Klepper* and *William M. Fitch* for respondents.

ELLISON, J.—This is an action of unlawful detainer begun before a justice of the peace and removed to the circuit court by certiorari, where the plaintiffs had judgment.

It appears that the property is farm land which in the year 1908 belonged to one Dice. He made a written lease of it to defendant "for a term of one year, commencing on the first day of March, 1908, and ending on the first day of March, 1909. And the said party of the first part (Dice) further agrees to and with the said party of the second part (defendant) to continue this lease from year to year, so long as mutually agreeable to the parties hereto, on the same terms and conditions."

He sold the land to plaintiff on the 25th of February, 1909, and the latter verbally notified defendant the next day that they had bought and wanted possession. On the 22nd of March, 1909, they made a written demand for possession as required by the unlawful detainer act.

The land leased to defendant by Dice and by the latter sold to plaintiffs consisted of one hundred and sixty acres; but all save forty acres was misdescribed in the lease, and the contest between the parties here seems thus to have narrowed down to whether plaintiffs were entitled to recover possession of the latter tract, and if so, to what damages and rents and profits they were entitled.

Evidence was admitted over defendant's objection as to the damages suffered by reason of being deprived of the whole tract, *in solido,* and the monthly value of the rents and profits of the whole tract. The damages were put by the witness at $200, and the monthly value of rents and profits at $50 or $60 per month. Afterwards the witness was recalled and his testimony confined to the forty acres in dispute, and he put the monthly rents and profits at $3.25 per acre, which would be something in excess of $10.80 per month, but said nothing as to the damages for detaining the forty acres. Yet the verdict returned was for $12 per month and $50 damages. Afterwards plaintiffs remitted $1.50 per month from the rental value, making the judgment

$10.50 per month. But there was no evidence sustaining the verdict for $50 damages. These sums were doubled by the court, as is provided by statute.

For error in admitting evidence of damage for detention of the tract not in controversy, and for rendering judgment for damages to the forty, without evidence supporting it, the judgment must be reversed.

But for the consideration following we would feel inclined to grant plaintiffs the privilege of remitting the latter sum, paying the costs and having the judgment affirmed.

That consideration is, that the lease, as copied above, is not only for one year, but it is also to continue from year to year. It amounts to this: A lease for one definite year and thence on from year to year so long as agreeable to both parties. We interpret that part of it referring to a continuation of the lease just as we would if it stood alone and the first clause had not been there. It would then have read that Dice leased the property to defendant "from year to year so long as mutually agreeable." That would have been a lease for at least one year. Therefore, taking the form of the contract as it stands, it is a lease for at least two years. For it specifies one year *and* that it shall be continued beyond that year, from year to year, so long as mutually agreeable. It is not a contract for one year and then, at the end of that year, if agreeable, it would be continued another year, but it is an absolute agreement to continue; there is a positive contract to continue beyond the first year, and that continuance was to be from year to year so long as agreeable to both parties. The matter of its being agreeable comes into play *after* the continuance begins. That our view is correct is made clear by the reflection that if no continuance could be had after the first year unless it was agreeable to both parties, the provision is meaningless and useless. For if both agree to continue on expiration of the year, they, of course, did not need a contract

to force them to do it. Plaintiffs' view of the contract could be likened to having two persons solemnly agree that they will do a certain thing if they both want to do it.

If we are correct in these observations the tenancy became one from year to year, requiring sixty days' notice to quit. If a tenant for one definite year holds over with the express or implied consent of the landlord, he becomes a tenant from year to year for an indefinite period and is entitled, under our statute, to sixty days' notice to quit. [Grant v. White, 42 Mo. 285; Finney v. St. Louis, 39 Mo. 177; Hall v. Myers, 43 Md. 446; 1 Taylor's Landlord and Tenant, secs. 467, 468; 1 Wood's Landlord and Tenant, 90, 608-610.] If he is entitled to notice when he holds over beyond his time without a contract, by all the greater reason can he demand notice when it is written in the contract that he may hold over.

Our interpretation of the contract is supported by authority. Thus it was said of leases of like character, that "they are leases for one, two and more years certain, according to the form of the lease, depending upon their further continuance upon the will of the parties." And that the law would presume them continued unless the contrary be evidenced by a proper notice. [Pugsley v. Aiken, 11 N. Y. 494; Sherwood v. Phillips, 13 Wend. 479.] And it was said in Doe v. Porter, 3 T. R. 13, that in case of a tenancy from year to year so long as both parties please, notice would be required to terminate the tenancy. In Harris v. Evans, 1 Wils. K. B. 262, it is said that "A lease to hold the tenant for one year, and so for two or three years, or any further term of years, as the parties shall think fit and agree, from and after the expiration of the said term of one year, is a lease for two years."

In Doe v. Green, 9 Ad. and E. 658, the lease was "For one year from date and so on from year to year until the tenancy hereby created shall be determined

as after mentioned." The lease then provided that either party could give three months' notice, and it was held that it could not be terminated the first year as the lease "clearly contemplated a longer term than one year."

So it was held in Denn v. Cartright, 4 East, 31, that a lease which was "not for one year only but from year to year, that it must enure for at least two years." And in Queen v. Chawton, 1 Q. B. 247, the lease was for the term of six months from the 1st day of January next and so on for six months to six months, until one of said parties shall give the other of them six calendar months' notice in writing to determine the tenancy; and it was held that a lease for at least two six-months-periods was meant.

In Doe v. Smaridge, 7 Q. B. 957, the lease was for three years from March 25, 1839, expiring on Lady Day, 1842. The tenant held over without further agreement. It was held that a tenancy from year to year arose and the question was whether it continued for two years after the certain period ended, that is, Lady Day, 1842. The court said that a tenancy from year to year lasts only so long as both parties please, that is, it is determinable by either party at the end of any year by giving the notice of six months which was at that time required. And so it was held that the tenancy could be terminated by six months' notice prior to the end of the first year after the end of the three-year certain period named in the lease.

But it is suggested that Dice and defendant agreed that the latter might sow some wheat on the premises and if the former sold the land he would pay for the wheat. This, if true, would be a mere volunteer matter unsupported by any consideration. If defendant sowed wheat it was no more than he had a right to do during the first year, since we have seen that under his written contract he had the place for at least two years.

It seems to use that plaintiffs in considering their and defendant's rights in the controversy, have overlooked one important element, and that is, that the law looks with favor upon the right of the tenant for a period not clearly ending at a definite time, to a notice to quit for the prescribed length of time. This is in the interest of husbandry, as well as fair dealing. Taking the present case as an instance, we have, as plaintiffs must concede even under their view of its terms, a contract which entitles defendant to a second year if agreeable to Dice, or to plaintiffs as his successor, yet he is not notified that it would not be agreeable until within a day or two of the time he is expected to give up possession. The object of sixty days' notice (six months was once required) is to give the tenant opportunity to seek and obtain another place, thus not only protecting himself and family, but advancing the cause of good husbandry.

The judgment must be reversed. All concur.